**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF AGRICULTURE, et al.,

Defendants.

Case No. 1:26-cv-11396-MJJ

# EXHIBIT 18

## DECLARATION OF STEPHANIE STAATS

I, Stephanie Staats, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am a resident of Maryland. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

**Professional Background**

2.     The Division of Social Services (DSS) within the Department of Health and Social Services (DHSS) is responsible for the administration of many public social services throughout Delaware. Among the programs administered by DSS is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

3.     I am currently employed by DHSS as Director of the DSS and have held this position since December 15, 2025.

4.     Prior to my most recent employment with DHSS, I was the Baltimore Field Office Director for U.S. Department of Housing and Urban Development.

5.     I have a Masters Degree in Public Administration and ABD in Social Science from Wilmington University.

6.     As Director of DSS, I am responsible for the administration of several federal and State social service programs that provide critical financial, food, and employment and training support to individuals and families with low income. My responsibilities include oversight of the

SNAP program in Delaware, which is a key part of Delaware's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food.

**Background on Delaware SNAP Program and Other Nutritional Programs**

7.      The Delaware SNAP Program is Delaware's version of the federal Supplemental Nutrition Assistance Program (SNAP) authorized under the Food and Nutrition Act of 2008, 7 U.S.C. § 2011 et seq. SNAP is the nation's largest nutrition assistance program and is designed to "permit low-income households to obtain a more nutritious diet" through normal channels of trade. 7 U.S.C. § 2011. SNAP benefits are 100 percent federally funded, while administrative costs are shared between the federal government and the State. The program operates as an entitlement: eligible households that apply must receive benefits. *See* 7 U.S.C. § 2014(a). Delaware's SNAP program is one of the largest social service programs in Delaware and serves as a core component of Delaware's anti-poverty and public health infrastructure. Delaware SNAP benefits stretch food budgets, allowing individuals and families to afford nutritious food, including more fruits, vegetables, and other healthy foods.

8.      Delaware's SNAP program is overseen by DHSS and is administered by the DSS pursuant to a USDA-approved State Plan of Operation. For Federal Fiscal Year 2025, Delaware has issued approximately $22 million in Delaware SNAP Program benefits per month, totaling over $260 million annually in federally funded food assistance. These benefits help about 119,000 Delawareans each month.[1]

9.      Delaware SNAP Program serves more than one in nine Delawareans and is Delaware's most effective anti-hunger intervention.

---

[1] USA Facts, *How many people receive SNAP benefits in Delaware every month?*, https://usafacts.org/answers/how-many-people-receive-snap-benefits-in-the-us-every-month/state/Delaware/ (last visited Mar. 13, 2026).

10.     Delaware SNAP Program plays a particularly critical role in supporting children. Approximately 17 percent of all household types receiving benefits include children, which includes more than 34 percent of female householders with children. Any disruption in benefits would therefore have not only immediate nutritional consequences but long-term developmental and economic consequences.

11.     In addition to improving access to healthier foods, Delaware's SNAP Program serves as an anti-poverty program. Delaware SNAP Program benefits are critical to Delawareans in need, particularly for low-income communities, those working low-wage jobs, and older adults on fixed incomes. Nutrition benefits allow Delawareans to use their limited financial resources to cover other necessary expenses including housing, healthcare, and childcare. The amount of Delaware SNAP Program benefits a household receives depends on the household size, countable income, and monthly expenses, such as housing and utilities.

12.     Delaware SNAP Program functions not only as a nutrition benefit but as a public health intervention. Food insecurity is associated with adverse health outcomes such as diabetes, hypertension, cardiovascular disease, depression, and anxiety. For Delaware households receiving Medicaid, loss of SNAP benefits would likely increase healthcare costs borne by the State and federal government. Because Delaware SNAP Program allows families to redirect limited income toward rent, medications, and preventive care, the loss of SNAP benefits would increase financial instability and negatively affect medication adherence and chronic disease management, placing additional strain on Delaware's healthcare delivery systems.

13.     DHSS/DSS also administers related programs such as Delaware SNAP Outreach (known federally as SNAP Outreach), an optional federal-State program that Delaware has chosen to operate to promote awareness of and participation in SNAP amongst eligible Delawareans.

Delaware SNAP Outreach Program seeks to ensure that all eligible individuals are aware of and receiving Delaware SNAP Program benefits. Delaware SNAP Program oversees a network of statewide contractors conducting targeted outreach and application assistance.

14. Another DHSS/DSS-administered nutrition benefit program, D-SNAP, is available to eligible Delawareans when a major disaster is declared by the President and Individual Assistance is approved. In these types of emergencies, program eligibility criteria are simplified, providing households impacted by a disaster who would not normally be eligible for Delaware SNAP Program with one month of food benefits based on their residency, income, and disaster impact.

15. Delaware SNAP Program and D-SNAP all use the same Electronic Benefit Transfer (EBT) system, which provides participants with a card, similar to a debit card, used to purchase groceries at participating retail vendors.

16. I am aware that USDA has released new General Terms and Conditions as of December 31, 2025, ("Conditions") that would be applicable to all USDA grants.

17. I am deeply concerned that USDA's Conditions, as applied to SNAP funding would impose requirements unrelated to SNAP's statutory purpose of alleviating hunger and would create potential operational conflicts with Delaware law. The Conditions require Delaware to comply with federal "policies" and other conditions on federal funding, including (1) federal policies on anti-discrimination that differ dramatically from our long-standing interpretations of federal laws, (2) the Executive Order on diversity, equity, and inclusions programs, (3) the Executive Order on gender identity, as well as (4) the prohibition on using grant funds "towards educational programs that deprive women and girls of fair athletic opportunities" and "towards programs that allow illegal aliens to obtain taxpayer-funded benefits."

18. The Conditions do not define or explain the terms used therein.

19. SNAP is governed by detailed federal statutes and regulations that define eligibility, benefit calculation, and nondiscrimination requirements. Conditioning SNAP funding on compliance with executive orders or policy interpretations that alter eligibility, nondiscrimination frameworks, or program operations risks directly conflicting with this statutory entitlement structure. *See* 7 U.S.C. § 2014(a) ("Assistance under [SNAP] *shall be furnished to all eligible households* who make application for such participation.") (emphasis added); *see also* 7 U.S.C. §§ 2011, 2024(d). The Conditions would require Delaware to modify eligibility systems, outreach efforts, or program administration to conform to such conditions, which would disrupt the uniform statewide administration required under federal SNAP regulations.

20. In my tenure with DHSS/DSS, I am not aware of DHSS/DSS staff ever being required by USDA to certify DHSS/DSS's compliance with unnamed Federal anti-discrimination policies as a precondition of receiving USDA funding. I am also not aware of DHSS/DSS staff ever being required by USDA to verify that no "illegal aliens" will obtain any "taxpayer-funded benefits" as a result of its USDA-funded programs.

21. DHSS/DSS operates its programs in compliance with Federal anti-discrimination laws and regulations.

22. My understanding is DHSS/DSS is uncertain as to what is required by the 2026 Conditions and therefore may be unable to certify compliance with USDA's Conditions.

23. In order to comply with any understanding of the Conditions that differs from existing Federal anti-discrimination laws and regulations, DHSS/DSS would require additional resources, both time and money, to establish new guidelines and train employees on how to comply with the Conditions.

**Human Costs of Potential Termination of SNAP Benefits**

24.    If DHSS/DSS is unable to comply with USDA's new funding conditions, the State would be unable to receive entire funding streams to which USDA now claims the Conditions apply. If USDA were to terminate or reduce its federal funding for Delaware SNAP Program based on these conditions or based on Delaware's inability to certify compliance with them, this would cause direct, immediate, and irreparable harm across Delaware, both at the State and local level.

25.    Delaware relies heavily on federal funding to operate Delaware SNAP Program. SNAP benefits are entirely federally funded, and the federal government reimburses approximately 50 percent of allowable administrative costs. USDA's longstanding federal funding has shaped Delaware SNAP Program design and funding expectations for decades. Because benefit costs alone exceed $260 million annually, Delaware does not possess the fiscal capacity to replace lost federal SNAP funding with State general funds. Even short-term disruption would create immediate budgetary shortfalls and likely result in layoffs, contract terminations, and system shutdowns.

26.    SNAP is a significant economic driver in Delaware. With approximately $22 million distributed monthly in Delaware, SNAP supports millions in downstream economic activity across grocery retailers, agricultural producers, transportation providers, and food manufacturers. Over 832 Delaware retailers are authorized SNAP vendors.[2] Failure to fund SNAP benefits will harm these businesses as well as nonprofits and social services agencies that support already-overwhelmed food banks and other community-based organizations that will simply not be able to meet the significant surge in need, nor make up for the loss of almost $22 million in

---

[2] U.S. Dep't of Agric., *SNAP Retailer Management Year End Summary FY 2024*, https://www.fns.usda.gov/data-research/data-visualization/snap-retailer-management-dashboard-fy24 (last visited Mar. 13, 2026).

benefits issued monthly. SNAP is the largest anti-hunger program in Delaware. Abrupt cessation of benefits would result in immediate revenue losses to these businesses.

27.     Termination of SNAP benefits would produce immediate food insecurity for approximately 119,000 Delawareans. Food insecurity is associated with higher rates of emergency department use, longer lengths of hospital stay, and avoidable hospital admissions. Children in food-insecure households are more likely to experience developmental delays and behavioral challenges. Families would be forced to ration any remaining benefits, turn to lower cost, but less nutritious, alternatives, and in many cases, skip meals entirely. Termination of SNAP benefits will force individuals and families to scramble for alternatives, including possibly going into debt or failing to meet other financial commitments, like the cost of rent, utilities, and medications, to continue meeting their basic needs. Accordingly, a sudden loss of SNAP benefits would have cascading health consequences that extend beyond hunger alone.

28.     SNAP is also an economic driver for Delaware local businesses. If thousands of Delawareans are forced to cut back on food spending at once, this will immediately and drastically affect the economic well-being of retailers across Delaware. The negative impact extends to the agriculture industry, including farmers, growers, and producers.

**Fiscal Impacts on Delaware from the Loss of SNAP Benefits**

29.     In addition to direct harm to families, the loss of SNAP benefit funding would have a significant fiscal impact on Delaware itself. For example, the loss of these benefits will result in greater need and requests for State funds to assist local food banks and community organizations that alleviate food insecurity for Delawareans.

30. The loss of SNAP benefit funding will cause significant strain on Delaware's emergency food safety net, forcing Delaware to dedicate State resources to supporting community organizations, such as food banks, that will see sharply increased demand.

31. Publicly available research has consistently demonstrated that food insecurity increases healthcare expenditures. Because many Delaware SNAP Program recipients are also Delaware Medicaid program beneficiaries, increased healthcare utilization would directly increase public expenditures. Thus, termination or disruption of SNAP benefits would not only harm beneficiaries but would likely increase costs within Delaware's healthcare system, including the Delaware Medicaid program.

32. Upon information and belief, Delaware does not readily have the fiscal resources available to replace federally funded SNAP benefits with equivalent state-funded benefits, nor could it do so without creating other downstream fiscal impacts.

**Administrative and Operational Burdens on Delaware**

33. If DHSS/DSS was unable to certify compliance with the Conditions, and unable to receive funding for SNAP benefits, that would significantly erode trust between Delaware and its residents built over many years and through the dedication of significant resources.

34. To properly effectuate its safety net programs, DHSS/DSS has devoted years of work to overcome stigma, misinformation, and other barriers to access. If households experience a disruption in benefits at this scale, they are likely to feel that the government has failed in fulfilling their responsibilities. DHSS/DSS has fostered trust with Delaware residents and stakeholders by representing to them that SNAP eligibility and compliance with programmatic requirements will lead to the receipt of benefits. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a

deep violation of residents' trust. If USDA terminates or withholds funding based on its novel imposition of these radical restrictions, it will have acted in disregard of those reliance interests of Delaware.

35.    DHSS/DSS anticipates that any disruption of SNAP funding would unduly burden its already limited administrative resources. DHSS/DSS would have to take significant steps to prepare for a disruption in SNAP benefits for an indefinite period. A disruption of any length will burden DHSS/DSS and the extent of this burden increases in relation to the duration of the disruption, as the scale of resources required to manage the disruption mount over time.

36.    The potential indefinite disruption to SNAP benefit issuances would result in additional administrative burden for DHSS/DSS as a result of the need for extensive consultation with the State's eligibility system and EBT vendor, system enhancements, additional policy guidance to counties, and communications to recipients.

37.    DHSS/DSS anticipates it would have to spend significant administrative resources managing communications and inquiries regarding the availability of SNAP benefits. A significant number of staff across multiple Divisions would have to redirect their attention to this effort, in lieu of other important initiatives.

38.    If DHSS/DSS were unable to receive SNAP funding it would experience higher call volume, foot traffic and disruptions at Delaware's social service center SNAP offices as hungry individuals and families learn they cannot access their benefits. Local staff would need to explain to recipients that they will not receive the SNAP funds needed to feed their children and put food on the table. These local office staff will face significant burdens on their time and will likely need to divert their attention from other critical work.

**Impact on Delaware's Provision of Other Public Benefits**

39.     SNAP eligibility is integrated into Delaware's broader public benefits eligibility systems, including Delaware's Medicaid program, and Delaware's housing stability programs, and cash assistance program. DHSS/DSS determines eligibility for multiple programs simultaneously using shared technology platforms and caseworkers. A disruption in SNAP funding would therefore destabilize integrated eligibility operations, requiring system reprogramming, retraining of staff, and reissuance of public communications. This would divert resources from the administration of other safety net programs.

40.     DHSS/DSS will be required to reallocate significant operational resources to crisis management, including emergency policy development, coordination with USDA, legislative engagement, vendor contract renegotiation, and public communication strategies. This diversion would delay modernization initiatives, delay implementation of federal reporting requirements, and impede improvements to other benefit delivery systems. The administrative disruption would be substantial even if SNAP funding were later restored.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed this 24th day of March 2026.

Stephanie Staats
Director, Division of Social Services
Department of Health and Social Services