**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF AGRICULTURE, et al.,

Defendants.

Case No. 1:26-cv-11396-MJJ

# EXHIBIT 31

## DECLARATION OF STEPHANIE COOPER

I, Stephanie Cooper, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am over the age of 18. I know the following facts based on my own personal knowledge and review of agency records. If called as a witness, I could testify competently to the matters set forth below.

### Background

2.      I am currently employed as Undersecretary for Environment at the Executive Office of Energy and Environmental Affairs (EEA) of the Commonwealth of Massachusetts. My job duties include overseeing and collaborating with the EEA environmental agencies, including the Massachusetts Department of Agricultural Resources (MDAR), the Department of Fish and Game (DFG), the Department of Conservation and Recreation (DCR), and the Department of Environmental Protection (MassDEP) to protect, preserve, and enhance the Commonwealth's environmental resources while ensuring a clean energy future for all. I serve as a key advisor on environmental issues and coordinate specific programs, including land conservation, park investments, toxics use reduction, and coastal zone management.

3.      I have been employed by EEA or by an agency within EEA since April 2005, and I have served as Undersecretary for Environment since March 6, 2023. Prior to serving as the Undersecretary for Environment, I served as the Deputy Commissioner for Policy & Planning and Chief of Staff at MassDEP, Assistant Secretary for Land & Forest Conservation at EEA, as well as the Acting Commissioner, Chief of Staff, and Director of Operations and Analysis at DCR.

4.      EEA seeks to protect, preserve, and enhance the Commonwealth's environmental resources while ensuring a clean energy future for the state's residents. Through the stewardship

of open space, protection of environmental resources, and enhancement of clean energy, EEA

works tirelessly to make Massachusetts a wonderful place to live, work, and raise a family.

5.      Two of EEA's environmental agencies, MDAR and DCR, collectively receive

substantial funding from the U.S. Department of Agriculture (USDA) to support a wide range of

programs meant to, inter alia, provide vital support to farmers that have experienced major losses

as a result of recent unprecedented weather events; provide fresh, locally sourced nutrition to

low-income women, children, and seniors; support wildfire prevention, detection, and

suppression; and monitor and respond to invasive pests and contagious diseases impacting state

wildlife populations and local industries.

6.      I am familiar with USDA awards recently issued to MDAR and DCR.

7.      In total, as of March 9, 2026, MDAR and DCR collectively have 54 open, active

grants from USDA totaling over $75 million.[1]

### MDAR and DCR's Receipt of USDA Grants

8.      Each year MDAR receives funding from USDA through several large, formula-

funded grant programs. These are core grant programs that support essential services. They

include the Specialty Crop Block Grant Program (SCBGP), the Women, Infants, and Children

(WIC) Farmers Market Nutrition Program (FMNP), and the Senior Farmers Market Nutrition

Program (SFMNP). MDAR is also in the process of finalizing a $42 million USDA formula

award made available by the American Relief Act to offset crop losses suffered by

Massachusetts agricultural producers during the 2023-2024 growing seasons and receives annual

USDA funding through the Cooperative Agricultural Pest Survey (CAPS) and the Plant

---

[1] This award count and summary figure do not include payments made from the USDA Natural Resource Conservation Service (NRCS) to MDAR under the Agricultural Conservation Easement Program.

Protection Act (PPA) Section 7721 Plant Pest and Disease Management and Disaster Prevention Program (PPDMDPP).

9.    DCR receives significant USDA funding through recurring annual financial assistance programs, including one that supports eradication of the Asian Longhorn Beetle (ALB) in Worcester County, the Volunteer Fire Capacity (VFC) Program (previously the Volunteer Fire Assistance Program), and Consolidated Payment Grants (CPGs). CPGs include funding for the Urban and Community Forestry (UCF), Forest Stewardship, State Fire Assistance (SFA), Wildfire Risk Reduction (WRR), and Forest Health Programs in Massachusetts. DCR also receives significant annual USDA Infrastructure Investment and Jobs Act (IIJA) funding through SFA and State Forest Action Plan (SFAP) awards, which provide additional funding for the Forest Stewardship, UCF, and Forest Health programs.

10.    In recent fiscal years, USDA has awarded the following award amounts to MDAR and DCR within these programs. FY 2026 allocation amounts for the American Relief Act Block Grant, State Forest Action Plan IIJA and State Fire Assistance IIJA funding have been communicated to Massachusetts, but the award agreements have not yet been finalized:

| Agency | Program | FY 2023 | FY 2024 | FY 2025 | FY 2026 |
|---|---|---|---|---|---|
| MDAR | Specialty Crop Block Grant Program (SCBGP) | $459,737 | $461,365 | $441,530 | TBD |
| | Women, Infants, and Children (WIC) Farmers Market Nutrition Program (FMNP) | $966,622 | $726,203 | $374,510 | $240,071[2] |

---

[2] MDAR typically receives additional funding for WIC FMNP, WIC FMNP Administration, SFMNP, and SFMNP Administration awards as amendments over the course of the federal FY, depending on the availability of carryover funds from the previous year. Therefore, The FY 2026 amounts for these programs above likely do not reflect final allocations for the full FY.

| Agency | Program | FY 2023 | FY 2024 | FY 2025 | FY 2026 |
|---|---|---|---|---|---|
| | Women, Infants, and Children (WIC) Farmers Market Nutrition Program (FMNP) Administration | $197,983 | $148,740 | $76,707 | $49,171[2] |
| | The Senior Farmers Market Nutrition Program (SFMNP) | $522,545 | $484,727 | $468,118 | $441,180[2] |
| | The Senior Farmers Market Nutrition Program (SFMNP) Administration | $58,060 | $53,859 | $52,013 | $49,020[2] |
| | Cooperative Agricultural Pest Survey (CAPS) and Plant Protection Act (PPA) Section 7721 Programs[3] | $422,057 | $596,143 | $432,713 | TBD |
| | American Relief Act Block Grant | N/A | N/A | N/A | $42,105,170[4] |
| DCR | Agreement for the Eradication of the Asian Longhorned Beetle (ALB) | $3,100,000 | $2,800,000 | $2,800,000 | TBD |
| | Consolidated Payment Grant (CPG) | $1,551,342 | $1,499,826 | $1,468,589 | TBD |
| | Volunteer Fire Capacity (VFC)[5] | $129,671 | $130,042 | N/A | N/A |
| | State Fire Assistance (SFA) IIJA Funding | $172,854 | $176,783 | $190,676 | $192,832[4] |
| | State Forest Action Plan (SFAP) IIJA Funding | $429,000[6] | $448,000 | $478,703 | $481,181[4] |
| | **Total from USDA Grants Listed Above** | $8,009,871 | $7,525,688 | $6,783,559 | $47,889,257 |

---

[3] The amounts in this row include multiple awards. Depending on the FY, these awards may include funding for CAPS, CAPS infrastructure, orchard surveys, nursery surveys, *Phytophthora ramorum* surveys, honeybee surveys, forest pest outreach and emergency responses to the Box Tree Moth and Spotted Lanternfly.

[4] Agreement not yet executed.

[5] FY 2025 award included as part of FY 2025 CPG. FY 2026 funding amount will be $192,832, but will once again be provided as part of the CPG.

[6] The US Forest Service (USDA-USFS) awarded DCR $359,999 of FFY22 IIJA Forest Action Plan funding during FFY23 and later amended that award to include an additional $429,000 of FFY23 funding.

11.     The programs funded by these grants are vital to building agricultural resilience in order to protect and enhance both the farm economy and food security for all residents, connecting vulnerable populations to nutritious and fresh local produce, protecting the state's wildlife, forests, and other natural resources, and improving fire safety.

12.     If USDA were to withhold these funds from Massachusetts, farms in the state would be at greater risk of failure, resulting in the loss of jobs, economic activity, and crucial natural resources, and the food security of all residents would be threatened. The state's capacity to support wildfire prevention, detection, and suppression would be greatly reduced, and efforts to monitor and respond to invasive pests and diseases threatening local wildlife and industries would be severely hindered. The programs funded by these specific grants are described further below.[7]

### Specialty Crop Block Grant Program (SCBGP)

13.     I am familiar with SCBGP. These formula grants provide funding to states, which in turn provide this funding to eligible subrecipients to enhance the competitiveness of specialty crops, such as fruits, vegetables, tree nuts, dried fruits, horticulture, and nursery crops.

14.     SCBGP funding is administered in Massachusetts by MDAR.

15.     Because SCBGP awards are formula grants and not competitive grants, each state is entitled to a specific allocation. Each year, the MDAR Federal Funds Program Manager receives a notification from the Agricultural Marketing Service (USDA-AMS or "AMS")

---

[7] Balances for active awards in this declaration reflect funds that have been obligated by USDA to the relevant Massachusetts agency but have not yet been transferred to that agency through the reimbursement process. These balances include funds that have been committed by the state to subrecipients through grant programs, outlays already made by the agency that have yet to be reimbursed by USDA, as well as uncommitted and unspent funds.

regarding its funding allocation, at which point MDAR submits an application to receive the funds. For FYs 2021-2024, AMS communicated state allocations and application guidance around March, with a deadline to submit applications around May. For FY 2025, due to additional federal reviews of grants, AMS communicated state allocations and application guidance on May 9, 2025, and applications were due July 7.

16.     MDAR has applied for and received funds from the SCBGP for more than 20 years.

17.     As of March 9, 2026, MDAR has three open SCBGP awards from FYs 2023-2025:

      a.   FY 2023: Original Award of $459,737; balance of $202,021;

      b.   FY 2024: Original award of $461,365; balance of $350,186; and

      c.   FY 2025: Original award of $441,530; balance of $441,530.

18.     AMS published FY 2026 General Terms and Conditions, effective March 2026 and applicable to AMS award agreements. The FY 2026 AMS General Terms and Conditions provide that "[b]y signing the award agreement, recipients agree to comply with all applicable Federal statutes, regulations, and Executive Orders as incorporated by reference in the USDA General Terms and Conditions for Federal Awards" ("2026 Conditions").

19.     MDAR uses SCBGP funding to increase access to healthy, affordable food options, with a preference for fresh, locally sourced, Massachusetts-grown, caught or harvested healthy food, and to improve economic opportunities for nutritionally underserved communities in urban, rural, and suburban localities. These projects include educational and promotional programs to expand access to and consumption of specialty crops, promote accessibility to healthy food programs and increased nutrition education, and conduct research on innovative

specialty crop initiatives. One FY 2023 project, the Mobile Market and School Gardens Program, is building children's awareness of and enthusiasm for specialty crops while promoting farmers markets and the Healthy Incentives Program (HIP) to parents. To date, this project has reported over 750 children gaining knowledge of and consuming more specialty crops, with almost $100,000 in increased sales of specialty crops in the Worcester region. A FY24 project is breeding and will release two novel varieties of field tomato with high quality flavor and pest resistance. The cultivars will be released to the public at completion of the project, offering farmers more varieties to grow for their agricultural operations at no cost. During development, at least five farms will be involved with the testing, as well as multiple tasting events that will educate the public on the development process and benefits of the crop. A FY 2025 project entitled "Empowering Communities to Access and Prepare Local Specialty Crops Through Markets and Education" will increase direct and sustainable access to specialty crops for residents of public housing communities by facilitating connections to farmers markets, CSAs, farm stands, and grocery stores through hands-on workshops and outreach initiatives. This project aims to reach over 500 stakeholders who will gain technical knowledge about producing, preparing, procuring, and/or accessing specialty crops, as well as expand specialty crop offerings to 12 market access points in the Northampton region, a significant boost for the surrounding communities.

20.     MDAR has not yet received Massachusetts' FY 2026 allocation amount or application guidance. MDAR intends to apply for FY 2026 SCBGP funding as soon as Massachusetts' allocation is announced, which, based on the timing of the program in FYs 2021-2025, MDAR anticipates occurring between March and May.

**Women, Infants, and Children (WIC) Farmers Market Nutrition Program (FMNP)**

21.     I am familiar with WIC FMNP. These formula grants provide funding to assist States in providing eligible WIC participants with FMNP coupons in addition to their regular WIC benefits. These coupons can be used to buy eligible foods from farmers, farmers markets or roadside stands that have been approved by MDAR.

22.     WIC FMNP funding is administered in Massachusetts by MDAR.

23.     Because WIC FMNP awards are formula grants and not competitive grants, each state is entitled to a specific allocation. Each year, the Massachusetts FMNP Coordinator receives a notification from the Food and Nutrition Service (USDA-FNS of "FNS") regarding its funding allocation, at which point MDAR submits an application to receive the funds.

24.     Massachusetts has applied for and received funds from WIC FMNP for approximately 34 years.

25.     As of March 9, 2026, MDAR has two open WIC FMNP awards from FY 2026:

    a.   FY 2026: Original award of $240,071; balance of $240,071; and

    b.   FY 2026 (Admin): Original award of $49,171; balance of $49,171.

26.     Through FMNP, the tens of thousands of enrolled WIC beneficiaries in Massachusetts are eligible to receive coupons for fresh, nutritious, unprepared, locally grown fruits, vegetables, and herbs through farmers' markets and roadside stands. The program also serves to expand the awareness, use of, and sales at, farmers' markets and roadside stands.

27.     MDAR received FY 2026 WIC FMNP awards on December 22, 2025, and anticipates receiving amendments for additional funding throughout FY 2026, depending on the availability of program carryover funds from FY 2025. In FY 2025, following receipt of the initial WIC FMNP awards, MDAR received $269,986 and $55,299 in subsequent amendments to

its WIC FMNP and WIC FMNP Administration awards, respectively, between April and July of that year.

28.     MDAR has not received express communication from USDA-FNS regarding the application of the 2026 Conditions to WIC FMNP awards or amendments.

### The Senior Farmers' Market Nutrition Program (SFMNP)

29.     I am familiar with SFMNP. These formula grants provide funding to assist States in providing low-income seniors with coupons that can be exchanged for eligible foods (fruits, vegetables, honey, and fresh-cut herbs) at farmers' markets, roadside stands, and Community-Supported Agriculture (CSA) Programs.

30.     SFMNP funding is administered in Massachusetts by MDAR.

31.     Because SFMNP awards are formula grants and not competitive grants, each state is entitled to a specific allocation. Each year, the Massachusetts FMNP Coordinator receives a notification from FNS regarding its funding allocation, at which point MDAR submits an application to receive the funds.

32.     Massachusetts has applied for and received funds from SFMNP for approximately 25 years.

33.     As of March 9, 2026, MDAR has two open SFMNP awards from FY 2026:

   a.   FY 2026: Original award of $441,180; balance of $441,180; and

   b.   FY 2026 (Admin): Original award of $49,020; balance of $49,020.

34.     SFMNP provides eligible low-income seniors with access to locally grown fruits, vegetables, honey, and herbs, increases the consumption of local agricultural products through farmers markets, roadside stands, and CSAs, and aids in the development of new and additional markets, stands and CSAs.

35. MDAR received FY 2026 SFMNP awards on December 22, 2025, and anticipates receiving amendments for additional funding throughout FY 2026, depending on the availability of program carryover funds from FY 2025. In FY 2025, following receipt of its initial SFMNP awards, MDAR received $26,938 and $2,993 in subsequent amendments to its SFMNP and SFMNP Administration awards, respectively, in May of that year.

36. MDAR has not received express communication from USDA-FNS regarding the application of the 2026 Conditions to WIC FMNP awards or amendments.

**The Cooperative Agricultural Pest Survey (CAPS) and Plant Protection Act (PPA) Section 7721 Programs**

37. I am familiar with the CAPS and PPA Programs. These awards provide funding to assist States in conducting surveys targeted at specific exotic plant pests, diseases, and weeds identified as threats to U.S. agriculture, the environment, or both, and conducting public education and emergency response activities to address these threats when identified.

38. CAPS and PPA funding is administered in Massachusetts by MDAR.

39. Each year, the Massachusetts Crop and Pest Division Director receives notification of anticipated CAPS allocations from the Animal and Plant Health Inspection Service (USDA-APHIS, or "APHIS"). MDAR then submits a CAPS workplan in alignment with this allocation to APHIS. Once this workplan is approved by APHIS, MDAR submits the approved workplan as part of an application for the associated cooperative agreement.

40. Each year, for PPA funding, the Massachusetts Crop and Pest Division Director submits requests for the upcoming FY funding in July or August and typically receives final confirmation of FY funding levels and guidance for submitting applications around April.

41. Massachusetts has applied for and received funds from CAPS for more than 20

years and PPA for 14 years.

42. As of March 9, 2026, MDAR has five open CAPS and PPA awards from FYs 2024-2025:

    a. FY 2024 Spotted Lanternfly Response: Original award of $260,000; balance of $178,788;

    b. FY 2025 CAPS Infrastructure: Original award of $56,550; balance of $27,228;

    c. FY 2025 P. ramorum Survey: Original award of $20,000; balance of $3,805;

    d. FY 2025 Spotted Lanternfly Response: Original award of $275,500; balance of $275,500; and

    e. FY 2025 Forest Pest Outreach: Original award of $67,363; balance of $67,363.

43. On March 4, 2026, MDAR received an email from APHIS providing notification of the new APHIS General Terms and Conditions, effective for new awards issued on/after February 14, 2026 and for amendments to prior year awards that add additional funds. The new APHIS General Terms and Conditions expressly incorporate the 2026 Conditions by reference.

44. The CAPS program conducts science-based state surveys targeting invasive plant pests, diseases, and weeds identified as threats to U.S. agriculture and/or the environment. Surveys conducted through the CAPS Program represent a second line of defense against the entry of harmful plant pests and weeds. The mission of the CAPS program is to provide information about invasive pests of regulatory significance in the United States through early detection and surveillance. It was through the CAPS program that *Phytophthora ramorum*, an invasive plant pathogen which causes a syndrome known as "sudden oak death", was found and

was able to be contained and eradicated.

45.    Massachusetts uses PPA Section 7721 Plant Pest and Disease Management and Disaster Prevention Program funding for projects that safeguard state agriculture and natural resources against invasive pests and diseases. This has included surveys of honeybees, orchards, nurseries, and ornamental tree pests and diseases, as well as critical emergency response activities to address the emergence of the Spotted Lanternfly (SLF) and Box Tree Moth in the state. Emergency response funding through this program provides resources for the state to conduct the majority of the emergency response groundwork for APHIS.  It provides resources for potential treatments, education/outreach, additional survey/monitoring and establishing compliance agreement programs. For example, funds received for Box Tree Moth response assisted MDAR in establishing and running a compliance agreement program, in response to a federal quarantine placed on Massachusetts. The compliance agreement program permits an entity to ship boxwoods, the primary food source and host plant for Box Tree Moths, out of the state, as long as they perform certain activities to minimize the risk of shipped boxwoods facilitating the spread of this pest. Funds for SLF have assisted in treatments to slow the spread of the insect and to develop training materials required for certain affected businesses to move material through external state quarantines or comply with MDAR Notices of Abatement.

46.    On June 11, 2025, the Massachusetts Crop and Pest Division Director received notice from APHIS that the FY 2026 award opportunities for CAPS and PPA were open. MDAR subsequently coordinated with APHIS to develop a CAPS workplan and received approval of the workplan in September of 2025. MDAR intends to submit an application for the associated cooperative agreement by the April 3, 2026 deadline. MDAR submitted requests for FY 2026 PPA funding in July of 2025, and APHIS communicated verbally to MDAR that it expects to

provide notice of final funding levels and make awards in April.

### American Relief Act Block Grant

47.    I am familiar with the American Relief Act Block Grant ("Disaster Relief Grant") which provides funds to states to provide compensation to producers for necessary expenses related to crop, timber, and livestock losses as a result of weather events in 2023 or 2024.

48.    Disaster Relief Grant funding will be administered in Massachusetts by MDAR.

49.    On August 20, 2025, MDAR received notice from the Farm Service Agency (USDA-FSA or "FSA") that Massachusetts would receive $42,105,170 in Disaster Relief Grant funds. Since then, MDAR has worked with FSA to formulate a work plan for the distribution of these funds.

50.    Disaster Relief Grant funds administered by MDAR will be used to offset crop losses suffered by Massachusetts agricultural producers during the 2023-2024 growing seasons. Massachusetts' 2023-2024 growing seasons were marked by unprecedented floods, record late frosts, lasting droughts, increased pressure from invasive plants and pests, and numerous other weather-related challenges leading to devastating crop production losses for Massachusetts agricultural producers. The weather events in 2023 and 2024 not only impacted crops, but many farmers reported damage to fruit trees, vines, bushes, nursery crops, and some vegetables, that resulted not only in the loss of that year's crop but also necessitated planting new stock and ongoing maintenance for several years for the crop to mature and generate revenue from its yield. MDAR conducted a survey in January 2025 to determine the scope of the aforementioned losses. This survey, in addition to follow-up conversations and interviews with producers and commodity groups, identified nearly $50 million in crop losses. At MDAR's request, Farm Credit East conducted its own analysis of crop losses due to weather, resulting in an estimated

range of $60,000,000-86,000,000 for the two years combined, extrapolating from insurance indemnities and USDA disaster relief payments. This grant will provide critical funding to support producers recovering from these losses.

51.     MDAR continues to work with FSA to finalize the agreement for Disaster Relief Grant funds ("Disaster Relief Agreement"). On March 17, 2026, FSA provided MDAR with the latest version of the Disaster Relief Agreement and Workplan. FSA noted in this email that the FSA Grants and Agreements Division would start the process of assembling a notice of award to be signed by Massachusetts and FSA. The latest version of the agreement states that MDAR must "Comply with the applicable version of the General Terms and Conditions".

52.     FSA is an agency within the USDA Farm Production and Conservation Business Center ("USDA-FPCBC"), which states on its website that FPAC agencies fully adopted the 2026 Conditions on February 14, 2026, and that the 2026 Conditions apply to FSA awards fully executed on or after February 14, 2026.[8]

**Agreements for the Eradication of the Asian Longhorned Beetle (ALB Agreements)**

53.     I am familiar with the Agreements for the Eradication of the Asian Longhorn Beetle ("ALB Agreements"). These awards provide funding to Massachusetts to support the identification and eradication of ALB in Worcester County.

54.     ALB Agreement funding is administered in Massachusetts by DCR.

55.     In recent years, the Massachusetts Director of Forest Stewardship has typically received a notification from APHIS regarding its funding allocation in January or February, at which point DCR follows APHIS guidance for submitting an application to receive the funds.

56.     Massachusetts has applied for and received ALB Agreement funds for

---

[8] General Terms and Conditions | Farm Production and Conservation Business Center, https://www.fpacbc.usda.gov/about/grants-and-agreements/general-terms-and-conditions.

approximately 18 years.

57.    As of March 9, 2026, DCR has one open ALB Agreement:

a.    FY 2025: Original award of $2,800,000; balance of $1,363,192

58.    On March 4, 2026, DCR received an email from APHIS providing notification of the new APHIS General Terms and Conditions, effective for new awards issued on/after February 14, 2026 and for amendments to prior year awards that add additional funds. The new APHIS General Terms and Conditions expressly incorporate the 2026 Conditions by reference.

59.    ALB is an invasive insect that harms many kinds of trees in the United States. The beetle comes from China and the Korean Peninsula and is in the wood-boring beetle family Cerambycidae. In its native range, ALB has killed millions of trees in China[9]. ALB was first found in Massachusetts in August 2008. That year, DCR began quarantining the affected areas and isolating the beetles. In Massachusetts, DCR and APHIS work together to run the ALB eradication program. ALB is a serious threat to forests, city trees, parks, and wildlife, thereby inflicting substantial economic harm on landowners (including DCR and other Commonwealth agencies and political subdivisions) and businesses including lumber and plant nurseries. Work funded by the ALB Agreements is critical to removing ALB and avoiding major damage to landowners and affected industries.

60.    DCR has not yet received details from APHIS regarding FY 2026 funding levels but intends to apply for the FY 2026 ALB Agreement funding as soon as APHIS communicates the state's allocation.

---

[9] Robert A. Haack, Franck Hérard, Jianghua Sun, Jean J. Turgeon. 2010. Managing Invasive Populations of Asian Longhorned Beetle and Citrus Longhorned Beetle: A Worldwide Perspective. Annual Review Entomology. 55:521-546. https://doi.org/10.1146/annurev-ento-112408-085427

**Consolidated Payment Grants (CPGs)**

61.    I am familiar with the Consolidated Payment Grants (CPGs). These awards provide funding to Massachusetts to support core DCR programs, including Urban & Community Forestry (UCF), Forest Stewardship, State Fire Assistance (SFA), Wildfire Risk Reduction (WRR), and Forest Health. Starting in FY 2025, funding for DCR's Volunteer Fire Capacity (VFC) Program, which has historically been provided as a separate award, was included as part of the CPG.

62.    CPG funding is administered in Massachusetts by DCR.

63.    Each year, the Massachusetts Director of Forest Stewardship receives notifications from the Forest Service (USDA-USFS, or "USFS") regarding funding allocations for the programs supported by the CPG allocation, at which point DCR submits an application to receive the funds.

64.    Massachusetts has applied for and received CPG funds for approximately 30 years.

65.    As of March 9, 2026, DCR has five open CPG and VFC awards from FY 2021-2025:

    a.    FY 2021: Original award of $1,185,169; balance of $104,711;

    b.    FY 2022: Original award of $1,302,908; balance of $386,829;

    c.    FY 2022 (VFC): Original award of $96,528; balance of $11,369;

    d.    FY 2023: Original award of $1,551,342; balance of $721,403;

    e.    FY 2023 (VFC): Original award of $129,671; balance of $95,448;

    f.    FY 2024: Original award of $1,499,826; balance of $970,613;

    g.    FY 2024 (VFC): Original award of $130,042; balance of $130,042; and

h.  FY 2025: Original award of $1,468,589; balance of $1,447,123.

66.    On February 20, 2026, DCR received an email from USFS noting that guidance for FY 2026 CPGs "may be provided in late March / early April." The email also stated that grants and agreements awarded on and after February 14, 2026, will include the 2026 Conditions. On March 11, DCR received an email from USFS with the FY 2026 VFC funding levels, as well as notification that State Fire Capacity funding levels will be provided the week of March 23. Both of these awards will be provided as part of the CPG.

67.    The DCR Forest Fire Control Program relies heavily on annual funding through this grant to support purchasing of critical operational supplies, technology and equipment, which support statewide wildfire response and support in the national wildfire mobilization system. Since 2021, DCR Fire has received an average of $387,000 in funding to support operational needs. The DCR Forest Fire Control Program has also used this grant to successfully fund critical hazardous fuel reduction programs on state lands, support firefighter training, and support community wildfire risk planning initiatives.

68.    DCR's Urban and Community Forestry Program uses these funds to assist communities and nonprofit groups in protecting, growing, and managing community trees and forest ecosystems to improve the environment and enhance livability throughout Massachusetts. This funding supports a DCR staff member as well as a competitive grant program. In its most recent round of UCF Grants, DCR provided 10 subawards to eligible towns and organizations for local planting and tree inventory projects.

69.    The Forest Stewardship Program uses funding from this award to support and encourage private forest landowners' efforts to manage, enjoy, and care for their land using a long-term, goal-oriented approach by providing cost share programs for landowners.

70.    The Forest Health Program uses funding from this award to monitor and assess the factors that influence the health of Massachusetts' state forests, and Forest Health Program funding provided through this award also supports a DCR staff member.  DCR utilizes multiple survey and trapping protocols to research insects and diseases impacting forest conditions, and works in cooperation with state, federal, and municipal agencies to detect, manage, and treat biotic and abiotic factors that negatively impact Massachusetts' state forests.

71.    Through the VFC Program, DCR provides technical, financial, and other assistance to fire departments in towns with populations of less than 10,000 for forest fire related purposes. Small towns have been the recipients of training, Class A foam, personal protective gear, forestry tools, and other fire suppression equipment.  In its latest round of VFC grants, DCR awarded 43 subawards to eligible municipal fire departments.

72.    DCR intends to apply for the FY 2026 CPG funding as soon as application guidance is provided by USFS.

**State Fire Assistance (SFA) IIJA Funding**

73.    I am familiar with the State Fire Assistance (SFA) IIJA Funding. These awards provide funding to Massachusetts to support prevention and suppression of fires on state lands.

74.    SFA IIJA funding is administered in Massachusetts by DCR.

75.    Each year, the Massachusetts Director of Forest Stewardship receives a notification from the USFS regarding its funding allocation, at which point DCR submits an application to receive the funds.

76.    Massachusetts has applied for and received SFA IIJA funds for four years.

77.    As of March 9, 2026, DCR has two open SFA awards with funding from FY 2022-2025:

        a.  FY 2022 & 2023: Original award of $340,124; balance of $48,032; and

        b.  FY 2024 & 2025: Original award of $367,049; balance of $242,861.

78.    On February 20, 2026, DCR received an email from USFS, which included "FY26 IIJA State Fire Assistance (SFA)" under the heading "Grant Application Guidance Coming Soon". This email also noted that grants and agreements awarded on and after February 14, 2026, will include the 2026 Conditions. On March 11, DCR received an email from USFS stating that Massachusetts' FY 2026 SFA IIJA funding would be $192,832, but to wait to submit an application until further guidance was provided.

79.    The SFA IIJA funding assists the DCR Forest Fire Control Program in purchasing supplies and equipment for fire prevention. Municipalities rely on DCR's Forest Fire Control Program to assist them in fire detection, prevention and suppression. With this funding, the Forest Fire Control Program was able to purchase four fire command vehicles to replace the aging vehicles for four of the thirteen District Fire Wardens. In addition, some of the funding was used to upgrade and replace radios that are critical to fire suppression operations.

80.    DCR intends to apply for FY 2026 IIJA SFA funding as soon as additional application guidance is provided by USFS.

### State Forest Action Plan (SFAP) IIJA Funding

81.    I am familiar with the State Forest Action Plan (SFAP) IIJA funding. These awards provide funding to support implementation of Massachusetts' SFAP through the Forest Stewardship, UCF, and Forest Health programs.

82.    SFAP IIJA funding is administered in Massachusetts by DCR.

83.    Each year, the Massachusetts Director of Forest Stewardship receives a notification from the USFS regarding its funding allocation, at which point DCR submits an

application to receive the funds.

84. Massachusetts has applied for and received SFAP IIJA funds for four years.

85. As of March 9th, 2026, DCR has three open SFAP awards with funding from FY 2022-2025:

    a. FY 2022 & 2023: Original award of $824,999; balance of $148,720;

    b. FY 2024: Original award of $448,000; balance of $448,000; and

    c. FY 2025: Original award of $478,703; balance of $478,703

86. On February 17, 2026, DCR received application guidance for FY 2026 IIJA SFAP Funding from USFS, along with an allocation amount of $481,181 and an application due date of March 19, 2026. On February 20th, DCR received an email from USFS referencing this guidance and noting that grants and agreements awarded on and after February 14, 2026 will include the 2026 Conditions.

87. SFAP IIJA funding has been used for salary for an Urban and Community Forester and a Forest Health Forester. In addition, some of the awards support a forest mentorship program designed to engage youth in environmental management fields.

88. DCR submitted an application for FY 2026 SFAP IIJA funding on March 12. The application did not require DCR to certify compliance with the 2026 Conditions, but DCR expects it will be required to certify at a later date in order to accept an award.

### Harms to the State Caused by USDA's New Funding Conditions

89. I am aware of the December 31, 2025 Secretarial Memorandum ("Rollins Memo") issued by Secretary of Agriculture Brooke L. Rollins directing all USDA agencies and staff that issue "grants, cooperative awards, and other similar arrangements, including mutual interest agreements" to implement new general terms and conditions, dated December 31, 2025

(the "2026 Conditions").

90.     The 2026 Conditions state: "Unless otherwise prohibited by law, recipients and subrecipients of USDA Federal financial assistance grants and cooperative agreements must comply with these General Terms and Conditions. These General Terms and Conditions are in addition to the assurances and certifications made as part of the Federal award and any agency- or program specific terms, conditions, and restrictions included in the Federal award."

91.     The 2026 Conditions fail to clarify what if any climate change or environmental justice initiatives are contrary to law or USDA policy.

92.     As described above, USFS has expressly notified DCR that the 2026 Conditions will govern FY 2026 awards under the CPG, SFA IIJA and SFAP IIJA programs. USDA-FPCBC has expressly stated that the 2026 Conditions apply to new FSA awards on or after February 14, 2026. FSA also incorporated language in the latest version of the Disaster Relief Funding that MDAR must "Comply with the applicable version of the General Terms and Conditions", though it has not notified MDAR whether this is in reference to the 2026 Conditions. APHIS has provided both DCR and MDAR updated APHIS General Terms and Conditions, which incorporate the 2026 Conditions by reference and which apply to new awards and amendments. MDAR and DCR have not yet entered into FY 2026 CAPS, PPA, or ALB awards. AMS published updated general terms and conditions, effective March 2026, which incorporate the 2026 Conditions by reference, but has not specifically notified MDAR that those conditions will apply to FY 2026 SCBGP awards. FNS has not provided any specific notice to MDAR that the 2026 Conditions will apply to WIC FMNP or SFMNP funding; and MDAR does not believe the terms should apply to those funding streams. To the extent USDA agencies have confirmed or otherwise intended to impose the 2026 Conditions on the programs described

herein, Massachusetts would suffer significant harms.

93.     For instance, under 12.2 of the 2026 Conditions, "[t]he recipient must comply, and certif[y] that it will comply, with all applicable Federal anti-discrimination laws, regulations, and policies for the duration of the Federal award," including but not limited to Presidential Executive Order 14168 and Presidential Executive Order 14173. The 2026 Conditions do not define or identify all the Federal anti-discrimination "policies" to which the recipient must certify, or whether that certification is meant to apply to funded programs or across the recipient entity. Consequently, if Section 12.2 were applied to the programs discussed herein, EEA agencies would not know what USDA expected of them with respect to federal "policies."

94.     Section 12.2 further requires recipients to "include the provisions of this clause in all subawards and contracts awarded under the Federal award." Section 5.3 requires recipients to "evaluate each subrecipient's risk and establish monitoring activities as necessary to ensure each subrecipient complies with... the terms and conditions of the subaward."

95.     Section 13.10, titled EO 14218: Ending Taxpayer Subsidization of Open Borders, further states in full: "No funding shall be directed towards programs that allow illegal aliens to obtain taxpayer-funded benefits, provide public resources to meet the needs of illegal aliens, or provide incentives for illegal immigration by demonstrating the availability of public benefits." The 2026 Conditions do not define what constitutes "benefits," "public resources" or "incentives" in this context. As with Section 12.2, if Section 13.10 were applied to the awards described herein, EEA agencies would not know exactly what USDA expected of them.

96.     In the event USDA intends to impose additional verification requirements on funding recipients through the 2026 Conditions, MDAR and DCR would experience significant compliance and operational burdens. These agencies operate their programs in compliance with

Federal constitutional law, statutes, and regulations governing non-discrimination practices and the provision of public benefits to immigrants. To the extent the 2026 Conditions mean to impose *new* requirements on these agencies, and those requirements were deemed lawful, these agencies would need to digest and develop guidance about those requirements, and train employees. It also may need to adopt new technology or other systems to implement those requirements and ensure compliance with them across subrecipients. For example, neither MDAR nor DCR know, nor are they able to verify, whether any illegal aliens in Massachusetts benefit from its USDA-funded programs, including in the areas of wildfire protection, urban forestry improvements, and forest health.

97.     This burden would be amplified significantly based on the subrecipient monitoring obligations imposed by the 2026 Conditions. For example, with the SCBGP, MDAR provides funds to subrecipients. Under the 2026 Conditions, MDAR would effectively be required to certify that each of the subrecipients are compliant with the 2026 Conditions. MDAR does not have the infrastructure for this.

98.     In my years with EEA and its agencies, I am not aware of USDA imposing conditions like these on the state's receipt of the funded programs described herein. Nor would doing so make any sense, given the long-accepted goals of these programs to build agricultural resilience in order to protect and enhance both the farm economy and food security for all residents, connect vulnerable populations to nutritious and fresh local produce, protect the state's wildlife, forests, and other natural resources, and improve fire safety—not to advance unspecified government "policies" or immigration goals.

99.    If USDA were to withhold funding for the programs described herein, the state would suffer. Neither MDAR nor DCR have any other appropriations in their budgets that could cover the full loss of the grants discussed above.

100.    CAPS and PPA awards provide funding for 3 full-time employees of MDAR. No state funding has been budgeted to retain positions past June 30, 2026 if the agency does not receive FY 2026 awards following the expiration of the FY 2025 CAPS award on April 30 and the PPA award on May 31. Additionally, no state funding has been budgeted for retention or hire of seasonal contractors after June 30, 2026 if the agency does not receive the FY 2026 awards. Seasonal contractors perform essential services including, but not limited to, surveying, monitoring, and following up on invasive pest sightings. Staff funded through CAPS and PPA awards are dedicated to protecting Massachusetts—especially farms and crops—from invasive pests, which cost North America more than $26 billion per year. Massachusetts is particularly vulnerable because of Boston's role as a major international port of entry. Without the funding provided through CAPS and PPA, MDAR will be unable to continue its invasive pest program, and invasive pest surveys, monitoring, and emergency response will not be conducted.

101.    If FNS withholds future WIC FMNP and SFMNP awards to MDAR, tens of thousands of households susceptible to food insecurity and diet-related health issues, including those with low-income pregnant and post-partum women, infants, children, and seniors, would lose a key resource for accessing healthy, local food.

102.    If FSA withholds the American Relief Act Block Grant from MDAR, the agency would be unable to provide much-needed relief to the farmers that experienced the estimated $60,000,000-$86,000,000 in losses due to unprecedented weather events in 2023 and 2024.

103. If AMS withholds future funding for MDAR under SCBGP, it may no longer be able to provide grants to farmers and other eligible subrecipients to raise awareness of the availability of specialty crops, jeopardizing the businesses responsible for producing these crops, as well as the health of communities that consume more of these healthy crops as a direct result of funded projects. On February 23, 2026, MDAR posted application guidance for eligible subrecipients to submit projects to be funded by the FY 2026 SCBGP award. Applications are due April 3, and if MDAR is unable to receive the FY 2026 award, these projects will not be funded.

104. ALB Agreements provide the entirety of funding for twelve full-time DCR employees and eight long-term seasonal staff. If APHIS withholds FY 2026 funding or an extension of the current award expiring on June 30, the agency may be forced to conduct layoffs. This would in turn severely compromise the survey work DCR could perform, thereby jeopardizing gains made to date in reducing the prevalence of these impactful pests, and increasing the risk of damage to businesses such as lumber and plant nurseries.

105. If USFS withholds future DCR CPG funding, it would significantly curtail core DCR programs that support fire suppression capacity and landowner efforts to enhance wildlife habitats, create recreational opportunities, and preserve forest and water quality and enhanced livability throughout the state. This loss would significantly reduce DCR's Forest Fire Control Program's ability to purchase critical operational supplies, technology and equipment, which support statewide wildfire response and support in the national wildfire mobilization system, as 71% of the Program's operational needs are funded through the CPG. This loss would also severely impact the agency's ability to manage fuel reduction projects in high-risk areas of state forest adjoining private land at risk from wildfire and virtually suspend most prescribed fire

projects where pre-burn treatments are required for safe and successful prescribed fire operations. Without the VFC funding, DCR would no longer be able to offer grants to small volunteer fire departments in Massachusetts for equipment purchases. These grants are essential to provide small towns with funding for specialized equipment and training for wildfires that these towns would not otherwise have the budget for. Without the UCF funding, DCR would no longer be able to provide grants to municipalities and nonprofit groups for tree-planting projects, and the loss of Forest Stewardship funding would significantly reduce the amount of cost share DCR could provide to private landowners to successfully manage wildlife habitats and recreational spaces. Loss of Forest Health funding would jeopardize the monitoring and management of invasive pests in Massachusetts forests.

106.    If USFS withholds DCR IIJA SFAP funding, it would reduce supplemental funding used to support DCR full-time employees in the UCF and Forest Health Programs. This would exacerbate the UCF and Forest Health Program impacts described under the CSG award above.

107.    If USFS withholds DCR IIJA SFA funding, it would result in expanded impacts to the DCR Forest Fire Control Program's ability to purchase supplies and equipment for fire prevention, as described under the CPG award above.

108.    Losing these USDA grants would severely obstruct and undermine MDAR and DCR's missions even if the funding were restored at a later date.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 25, 2026, in Boston, Massachusetts.

Stephanie Cooper