**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF AGRICULTURE, et al.,

Defendants.

Case No. 1:26-cv-11396-MJJ

# EXHIBIT 48

**<u>DECLARATION OF KELLY STRAKA</u>**

I, Kelly Straka, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am over the age of 18. I know the following facts based on my own personal knowledge and review of agency records. If called as a witness, I could testify competently to the matters set forth below.

**<u>Background</u>**

2.      I am the Fish and Wildlife Division Director at the Minnesota Department of Natural Resources (DNR). My job duties include providing direction and oversight of fish and wildlife operations and management across the state.

3.      I have been employed by DNR since September 2021, and I have served as Fish and Wildlife Division Director since July 2024. Before starting at DNR, I served in fish and wildlife related roles for the Michigan Department of Natural Resources and the Missouri Department of Conservation.

4.      The mission of DNR is to work with Minnesotans to conserve and manage the state's natural resources, to provide outdoor recreation opportunities, and to provide for commercial uses of natural resources in a way that creates a sustainable quality of life..

5.       DNR receives substantial funding from the U.S. Department of Agriculture (USDA) to support a wide range of programs meant to promote wildlife health and provide hunting access.

6.      I have reviewed past and present USDA award documents issued to DNR and am familiar with their contents.

7.      In total, as of March 11, 2026, DNR's Division of Fish and Wildlife has one open, active grant from USDA in the amount of $583,157.87. This total includes grants from USDA's

subagency, the U.S. Forestry Service (USFS).

### DNR's Receipt of USDA Grants

8.      In recent years DNR's Division of Fish and Wildlife has received funding from USDA through cooperative grant programs to states.  They include Wildlife Services and Voluntary Public Access and Habitat Incentive Program.

9.      In recent fiscal years, USDA has awarded the following grant amounts to DNR within these programs:

|  | FY 2023 | FY 2024 | FY 2025 |
|---|---|---|---|
| Wildlife Services | $295,000 | $364,929 | $10,000 |
| Voluntary Public Access and Habitat Incentive Program | - | - | $583,158 |
| **Total from USDA Grants Listed Above** | $295,000 | $364,929 | $593,158 |

10.      The programs funded by these grants are vital to protect wildlife health and provide hunting access in Minnesota. Minnesota Wildlife health grants are used for wildlife disease surveillance and research. Voluntary Public Access and Habitat Incentive Program Grants lease land from private landowners to provide hunting access.

11.      If these funds were withheld, DNR would have to reduce surveillance of wildlife diseases, decrease research related to wildlife disease management, and reduce acres of available land accessible to the public.  The programs funded by these specific grants are described further below.

### Wildlife Services Grants

12.      I am familiar with the Wildlife Services Grant Program. Wildlife Services grants provide funding to assist States in monitoring and responding to wildlife health and disease risks.

13. Wildlife Services funding is administered in Minnesota by DNR through its Division of Fish and Wildlife.

14. Minnesota has applied for and received funds from Wildlife Services grants for approximately ten years. As of 3/13/2026, DNR has 0 open Wildlife Services awards.

15. Wildlife Services awards have supported surveillance of emerging wildlife diseases such as Highly Pathogenic Avian Influenza, Chronic Wasting Disease and SARS COVID-19. These awards have also supported research to improve management practices for Chronic Wasting Disease.

16. I am familiar with the Voluntary Public Access and Habitat Incentive Program. Voluntary Public Access and Habitat Incentive Program grants provide funding to assist States in providing public access for hunting.

17. Voluntary Public Access and Habitat Incentive Program Grant funding is administered in Minnesota by DNR.

18. Minnesota has applied for and received funds from Voluntary Public Access and Habitat Incentive Program grants for approximately sixteen years.

19. As of 3/11/2026, DNR has one open Voluntary Public Access and Habitat Incentive Program awards from FY 2025.

   a. FY 25: Original award of $583,158; balance of $46,403;

20. Voluntary Public Access and Habitat Incentive Program awards in Minnesota provide public hunting access to private lands through a lease program. In 2025 this program enrolled approximately 30,000 acres. In addition to access, this program provides income for landowners for land with wildlife habitat, encouraging the conservation of this habitat.

**Harms to the State Caused by USDA's New Funding Conditions**

21.    I am aware that USDA issued new General Terms and Conditions, effective December 31, 2025, that purport to apply to all of USDA's grants, cooperative agreements, and mutual interest agreements (the "2026 Conditions"). The 2026 Conditions require funding recipients to certify compliance "with all applicable Federal anti-discrimination laws, regulations, and policies for the duration of the Federal awards," including two of President Trump's Executive Orders. The 2026 Conditions do not define or identify the applicable federal policies to which the recipient must certify. The 2026 Conditions prohibit funding from being "used to promote gender ideology" without explanation. The 2026 Conditions also prohibit the recipient from, among other things, directing funding "towards programs that allow illegal aliens to obtain taxpayer-funded benefits." The 2026 Conditions do not define what constitutes "benefits" in this context, or what it means to direct funding "towards" a program.

22.    In my years with DNR, I am not aware of DNR staff ever being required by USDA to certify DNR's compliance with unnamed Federal anti-discrimination *policies* as a precondition of receiving USDA funding. I am also not aware of DNR staff ever being required by USDA to verify that no "illegal aliens" will obtain any "taxpayer-funded benefits" as a result of its USDA-funded programs.

23.    DNR operates its programs in compliance with Federal anti-discrimination laws and regulations.

24.    My understanding is DNR is uncertain what is required by the 2026 Conditions and therefore may be unable to certify compliance with USDA's 2026 Conditions.

25.    In order to comply with any understanding of the 2026 Conditions that differs from existing Federal anti-discrimination laws and regulations, DNR would require additional resources, both time and money, to establish new guidelines and train employees on how to

comply with the 2026 Conditions.

26.    For example, DNR does not know, and is not able to verify, whether any illegal aliens in Minnesota benefit from its USFS-funded programs, including in the areas of wildfire protection, urban forestry improvements, and forest health.

27.    If DNR is unable to comply with USDA's new funding conditions, the State would be unable to receive FY2026 USFS funds, frustrating its ability to maintain the critical programs described above.

28.    DNR does not have any other appropriation in its budget that could cover the loss of the grants discussed above. If DNR cannot access USFS funds, DNR will not have funds to immediately cover the Voluntary Public Access Habitat Incentive Program. This, in turn, will result in a reduction of acres available for public hunting access.

29.    Losing these USFS grants would severely obstruct and undermine DNR's mission even if the funding were restored at a later date.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 13, 2026 in Duluth, Minnesota.

_____

Kelly Straka