**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF AGRICULTURE, et al.,

Defendants.

Case No. 1:26-cv-11396-MJJ

# EXHIBIT 71

## DECLARATION OF PAULA TRAN

I, Paula Tran, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am over the age of 18. I know the following facts based on my own personal knowledge and review of agency records. If called as a witness, I could testify competently to the matters set forth below.

## Background

2.      I am the State Health Officer for the State of Wisconsin and the Administrator of the Division of Public Health (DPH) at The Wisconsin Department of Health Services (DHS). DHS is the state agency responsible for administration of the Special Supplemental Nutrition Program for Women, Infants, and Children, commonly known as WIC, which is funded through grants from the U.S. Department of Agriculture (USDA), Food and Nutrition Services (FNS). *See* 7 C.F.R. § 246.2 & 246.3. My job duties include overseeing the DHS programs that administer WIC in Wisconsin.

3.      DHS's mission is to protect and promote the health and safety of the people of Wisconsin. DPH specifically aims to prevent and protect against health problems, and create and support programs and services that promote positive health outcomes for current and future generations of Wisconsinites. To achieve these goals, DPH uses data, evidence, and research to support its solutions to improve outcomes, and it works with a variety of external partners to build coalitions that support programs and services that promote healthy communities.

4.      I have been employed by DHS since August 22, 2021, and I have served the Administrator of DPH since August 22, 2021. Before starting at DHS, I served at the University of Wisconsin-Madison Population Health Institute as the Mobilizing Action Toward Community Health Director.

5.      I have reviewed past and present WIC award documents issued to DHS and am familiar with their contents.

**Wisconsin's Annual Receipt of WIC Funding**

6.      USDA allocates funding for food (designated "FOOD" in the table below) and Nutrition Services Administration (NSA). The following amounts of WIC funding were allocated to DHS in recent fiscal years:

| FY 2023 | FY 2024 | FY 2025 | FY 2026 |
|---|---|---|---|
| Total: $99,830,776<br>• FOOD: $66,432,328<br>• NSA:$33,398,448 | Total: $100,986,367<br>• FOOD: $65,026,935<br>• NSA: $35,959,432 | Total: $105,958,061<br>• FOOD: $68,372,285<br>• NSA: $37,585,776 | Total: $106,888,854<br>• FOOD: $68,926,101<br>• NSA: $37,962,753<br><br>Current (through quarter 2): $64,043,037<br>• FOOD: $40,558,793<br>• NSA: $23,484,244 |

7.      WIC funds are disbursed by USDA quarterly through Grant Award Documents (GADs). DHS expects to receive award documents from USDA indicating the amount of its WIC Funding for FY2026 by July 31, 2026.

8.      These funds are used for food package benefits, and nutrition services and administrative costs. Funds are allocated to local agencies to provide direct services and pay for personnel such as nutritionists at the local level to provide the nutrition education and support. The funds also support the state office administration costs such as personnel and operating costs that include the Management Information System (MIS) and Electronic Benefit Transfer (EBT) system.

9.      In calendar year 2025, 141,758 people were enrolled and participated in Wisconsin WIC. Of those 141,758 participants, 79,487 were children, 37,906 were women, and 24,365 were infants.

**Harms to the State Caused by USDA's New Funding Conditions**

10.     I am aware that USDA issued new General Terms and Conditions, with an effective date of December 31, 2025, that purport to apply to all of USDA's grants and cooperative agreements (the "Conditions"). The Conditions require funding recipients to certify compliance "with all applicable Federal anti-discrimination laws, regulations, and *policies* for the duration of the Federal awards," including two of President Trump's Executive Orders (emphasis added). The Conditions do not define or identify the applicable "policies" to which the recipient must certify. Among other things, the Conditions also prohibit the recipient from directing funding "towards programs that allow illegal aliens to obtain taxpayer-funded benefits." The Conditions do not define what constitutes a "benefit[ ]" in this context.

11.     DHS does not understand what is required of it under the Conditions.

12.     Although DHS is aware of the Conditions, USDA has not expressly imposed the Conditions on DHS's WIC program. DHS does not know whether USDA will attempt to impose the Conditions on DHS's WIC program in the future by, for example, issuing an amendment to DHS's State-Federal Agreement with FNS. On March 4, 2026, DHS received a communication from FNS noting that FNS will be updating its civil rights guidance to reflect current civil rights obligations, including recent Executive Orders.

13.     In my years with DHS, I am not aware of any DHS staff ever being required by USDA to certify DHS's compliance with unnamed Federal anti-discrimination *policies* as a precondition of receiving WIC funding. I am also not aware of DHS staff ever being required by USDA to verify that no "illegal aliens" will obtain any "taxpayer-funded benefi[t]" as a result of its WIC programs. I am aware that, under 7 C.F.R. § 246.7(c)(3), state agencies have the *option* to limit participation to United States citizens, nationals, and qualified aliens, but are not required

3

to do so.

14.    DHS operates its programs in compliance with Federal anti-discrimination laws and regulations.

15.    If the Conditions were to apply to DHS's WIC funding, my understanding is that DHS may be unable to certify compliance with them.

16.    If DHS is unable to receive or spend FY2026 WIC funds, vital nutrition, formula and health services, and breastfeeding support for pregnant individuals, postpartum mothers, and children in Wisconsin would cease operating. For infants enrolled in the program, losing funding increases the risks of negative long-term health consequences for low-income families, greater food insecurity, and reduced access to healthy foods such as milk, whole grains and fruits and vegetables.

17.    DHS does not have any state appropriation in its budget that could immediately cover the loss of WIC funding. A loss or delay in WIC funding would therefore severely disrupt or cease administration of the Wisconsin WIC program. WIC participants would likely be placed on waiting lists, clinics would either have to reduce hours or close, and breastfeeding and nutrition support programs would cease operations. It would also threaten access to formula and nutritious foods for vulnerable pregnant women, infants and young children.

18.    The longer DHS cannot access funds because it cannot certify compliance with the new Conditions, the greater the risk that programs will be interrupted or terminated.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 12, 2026, in Madison, Wisconsin.



_____

Declarant

4