**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al. | Case No. 1:26-cv-11396-MJJ |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF AGRICULTURE, et al. | **LEAVE TO FILE GRANTED ON MARCH 25, 2026** |
| Defendants. | |

**PLAINTIFF STATES' REPLY IN SUPPORT OF THEIR MOTION FOR A
PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

    I.     Plaintiffs' claims as to the FNS nutrition assistance programs are ripe........................1

    II.    The Challenged Conditions are unlawful. .................................................................5

          A.  The Challenged Conditions violate the Spending Clause.......................................5

              1.   The Spending Clause applies to Defendants.................................................5

              2.   The Challenged Conditions are unconstitutionally vague ..........................5

              3.   The Challenged Conditions are unrelated to USDA's programming...........8

              4.   The Challenged Conditions are unconstitutionally coercive ......................9

          B.  The promulgation of the Challenged Conditions was arbitrary and capricious.....11

              1.   The promulgation of the Challenged Conditions is subject to APA review
                    ..................................................................................................................11

              2.   Neither the goal of putting "America first" nor USDA's commitment to "agency priorities" provide a sufficient explanation for USDA's action ...12

              3.   USDA's intentionally disruptive approach violates the APA.....................13

          C.  The Policy and Immigration Conditions exceed USDA's statutory authority .......15

          D.  The Immigration and Gender Conditions are contrary to law ...............................18

          E.  USDA waived any defense of its failure to subject the Gender and Sports Conditions to notice and comment ....................................................................18

    III.   Plaintiff States have already been harmed by the Challenged Conditions ..................19

CONCLUSION ..................................................................................................................20

**TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ...................................6–8

*Bennett v. Spear*, 520 U.S. 154 (1997) ........................................................................................2

*California v. United States Dep't of Transportation*, 788 F. Supp. 3d 316 (D.R.I. 2025) ............20

*California v. United States Dep't of Transportation*, 808 F. Supp. 3d 291 (D.R.I. 2025) ..........4–5

*City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018) .....................................8

*City & County of San Francisco v. Trump*, --- F. Supp. 3d ---, 2026 WL 145874 (N.D. Cal. 2026)
..............................................................................................................................................5

*City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290 (2013) .......................................................5, 15–16

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) .....................................................5

*City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017) .........................................5

*Cody v. Cox*, 509 F.3d 606 (D.C. Cir. 2007) ...........................................................................12

*Colorado v. Trump*, No. 25-cv-03428, 2026 WL 734048 (D. Colo. Mar. 16, 2026). ....................15

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)...........................................................................11

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ...........................14–15

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ...........................................................12

*FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293 (2003) .......................................................18

*Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638 (1st Cir. 2000) .....................................8

*Herandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ...................................................................19

*Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75 (D.R.I. 2025)
..................................................................................................2–3, 5, 7, 9–10, 12, 14–15

*Illinois v. Fed. Emergency Mgmt. Agency*, No. 25-cv-206, 2025 WL 2908807 (D.R.I. Oct. 14, 2025) ..................................................................................................................................20

*King v. Town of Hanover*, 116 F.3d 965 (1st Cir. 1997) .............................................................18

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ......................................................................................12

ii

*Martin Luther King Jr. County v. Turner*, 785 F. Supp. 3d 863 (W.D. Wa. 2025) ..................19–20

*Massachusetts v. Nat'l Inst. of Health*, 770 F.Supp.3d 277 (D. Mass 2025) ...............................20

*Mayhew v. Burwell*, 772 F.3d 80 (1st Cir. 2014) ...............................................................10

*Mayweather v. Newland,* 314 F.3d 1062 (9th Cir. 2002) ..................................................7

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ..............................................4

*Metro. Transportation Auth. v. Duffy*, 784 F. Supp. 3d 624 (S.D.N.Y. 2025)................................14

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ........................................12

*Mississippi Comm'n on Env't Quality v. E.P.A.*, 790 F.3d 138 (D.C. Cir. 2015) ..........................10

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)
........................................................................................................................15

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ...............................................10–11

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ...................................................3

*New Jersey v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-11816, (D. Mass. July 31, 2025) .............8

*New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475 (S.D.N.Y. 2019) ...........5

*Ohio v. EPA*, 603 U.S. 279 (2024).   .......................................................................................12–13

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ...............................................5–8

*R.I. State Council of Churches v. Rollins*, 808 F. Supp. 3d 370 (D.R.I. 2025) .............................14

*Robbins v. Reagan*, 780 F.2d 37 (D.C. Cir. 1985)...........................................................................18

*Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78 (1st Cir. 2013) .................4

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) ...................................................2

*Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020) ........................................11

**Statutes and Regulations**

Pub. Law 118-158, 138 Stat. 1722 (2024) ....................................................................................16

5 U.S.C.
    § 551.....................................................................................................................................3
    § 701...................................................................................................................................11
    § 706...................................................................................................................................18

7 U.S.C.
  § 361b........................................................................................................................9
  § 361c......................................................................................................................16
  § 361g......................................................................................................................16
  § 1621.................................................................................................................12, 17

16 U.S.C. § 2106...................................................................................................12, 17

20 U.S.C.
  § 1681........................................................................................................................6
  § 1682........................................................................................................................9

42 U.S.C. § 2000d-1 ...............................................................................................9

2 C.F.R. § 200.340 .............................................................................................8, 14

**Constitutional Provisions**

U.S. Const. Article I, § 8, cl. 1 ................................................................................5

**INTRODUCTION**

In Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 49, hereinafter "Opp."), USDA asserts breathtaking power to remake social policy nationwide without constraint. Defendants argue USDA has more power over the purse than Congress. They contend that so long as an action is said to further "policy priorities," it satisfies the Administrative Procedures Act ("APA") and is largely insulated from judicial review. Remarkably, USDA now claims it has the authority to condition billions in federal funding on States' adoption of federal policy preferences to solve the "problem" of State laws and policies with which it disagrees. Those assertions of unchecked executive power offend the most fundamental principles of federalism. USDA is an executive agency with limited statutory authority—not a policymaking body with plenary power to impose conditions across vast federal programs, including congressionally mandated funding streams. Its project of coercing States into adopting USDA's preferred set of social policies is flatly inconsistent with the limits set by the U.S. Constitution and Congress, including the APA. The arguments in Defendants' Opposition do not mitigate the essential illegality of USDA's approach. Instead, they confirm the extraordinary and unjustifiable scope of USDA's asserted authority—and the need for immediate judicial relief.

**ARGUMENT**

**I.     Plaintiffs' claims as to the FNS nutrition assistance programs are ripe.**

Defendants argue at the outset that as to the Food and Nutrition Service ("FNS") nutrition assistance programs, Plaintiffs' claims are not ripe. Opp. 5. But Defendants do not disavow an intent to enforce the Challenged Conditions in the FNS programs. Instead, they argue that Plaintiffs' claims as to these programs are unripe because USDA has not made a "final decision" regarding the application of the Challenged Conditions to those programs. *Id*. at 6. That argument both fails as a matter of law and rests on a mischaracterization of the FNS programs.

1

First, Defendants misstate the nature of Plaintiffs' claim. Plaintiffs do not challenge only future, program-specific applications of the Challenged Conditions. They also challenge USDA's final decision to promulgate these Conditions as binding, across-the-board requirements governing federal financial assistance. This has already occurred and awaits no further "final decision." USDA has already directed all staff to "adopt and implement" the Challenged Conditions for "all future awards" (Doc. No. 1-3 at 2). That directive is neither tentative nor contingent—it is a consummated agency position with present legal consequences. This directive is final agency action under *Bennett v. Spear*, which requires that the action (1) mark the consummation of the agency's decisionmaking process and (2) determine rights or obligations or give rise to legal consequences. 520 U.S. 154, 177–78 (1997). Both requirements are satisfied. Here, USDA has completed its policy determination and imposed a default rule requiring recipients to "comply" with the Challenged Conditions unless prohibited by law. That rule alters the legal landscape governing federal funding now.

Second, Defendants' litigation position that there has not been a "final decision" regarding whether to implement the Challenged Conditions as to certain FNS programs does not render the promulgation of those conditions any less fit for judicial review. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (the "possibility" of later revisions to an agency action "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal"). Defendants fail to support their litigation position with a declaration, affidavit, or any other evidence regarding how USDA intends to implement the Challenged Conditions. But even if they had, courts routinely review agency rules at the time of promulgation, even where downstream implementation remains outstanding. Indeed, in *Illinois v. Fed. Emergency Mgmt. Agency*, the court rejected the same arguments Defendants advance here, holding that "the decision

2

to attach the conditions" was final even if application to specific funding streams was ongoing. 801 F. Supp. 3d 75, 89 (D.R.I. 2025).

Third, Defendants' assertion that it has not "made a final decision" to apply the Challenged Conditions "in the future" improperly treats FNS programs as discretionary "awards" to which conditions later may or may not be applied. But Congress mandated SNAP and the Child Nutrition Programs as formula-driven programs, governed by detailed statutory schemes, and States draw down from these programs *on an ongoing basis*. There is no discrete future moment at which States will submit an application to compete for future program funds. And because FNS programs are ongoing statutory entitlements, USDA's direction to "adopt and implement" the Challenged Conditions for "all future awards" presents a legal conflict, not a hypothetical future dispute.

The question of whether USDA may impose the Challenged Conditions on such programs is thus a purely legal one that is fit for immediate resolution. Ripeness turns on "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). Here, the fitness rule is met. On an APA claim, fitness overlaps with the question of whether defendants have taken "final agency action." *Nat'l Park Hosp. Ass'n,* 538 U.S. 812; *accord Illinois*, 801 F. Supp. 3d at 88. "Agency action" includes a "rule," defined broadly to include "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Defendants here have imposed a rule that applies to "Federal financial assistance." (Doc. No. 1-1 at § 1.1; *see* Doc. No. 1-2 at § 1.1). Plaintiffs' facial challenge to the legality of this default rule raises issues of statutory authority, constitutional limits, and APA compliance that do not depend on further factual development.

3

Further, fitness for judicial review is satisfied as Plaintiffs need clarity now confirming that they do not face legal liability in continuing to administer these programs. The law is clear that "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat[.]" *California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 306 (D.R.I. 2025) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007)). Defendants have already instructed state agencies to take action to prevent undocumented individuals from receiving benefits. (Doc. No. 44-13 at ¶¶ 22–23). Plaintiff States place themselves in uncertain legal territory by administering these programs as-is and need legal assurance that they may continue to do so.

Plaintiffs also meet the hardship prong, which asks "whether the challenged action creates a direct and immediate dilemma for the parties." *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 90 (1st Cir. 2013) (internal quotation marks and citation omitted). Here, the Challenged Conditions create an immediate and practical dilemma for the States, which must now plan for the administration of critical nutrition programs under conditions that per USDA may be enforced at any time. For example, the majority of SNAP recipients spend their benefits within the first two weeks of issuance, and some rely on SNAP benefits the day they are received to put food on the table. (Doc. No. 44-9 at ¶ 8; Doc. No. 44-26 at ¶ 7). The rapid expenditure cycle means that *any* disruption in funding would result in immediate food insecurity for vulnerable citizens and result in downstream consequences for local economies and food supply chains. *Id*. Preparing for any disruption in SNAP benefits thus requires significant time and resources, *see*, *e.g*., (Doc. No. 44-9 at ¶ 37; Doc. No. 44-18 at ¶ 35; Doc. No. 44-26 at ¶ 30), and it is unreasonable for Defendants to leave Plaintiff States guessing whether they will enforce the Challenged Conditions on these critical nutrition programs—a decision that could be made at any time, with no notice.

4

**II.     The Challenged Conditions are unlawful.**

**A.     The Challenged Conditions violate the Spending Clause.**

**1.     The Spending Clause applies to Defendants.**

The Spending Clause sets limits on the imposition of conditions on federal funds, whether Congress directly imposes the conditions or an agency imposes the conditions when purporting to execute laws that Congress passed. In a "typical" Spending Clause case, "the state assails the congressional statute itself for failing to unambiguously impose conditions on receipt of federal funds," not "interpretation of conditions imposed by an agency." *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 645 (E.D. Pa. 2017). But "[a]n agency which Congress has tasked with implementing a statute that imposes spending conditions is also subject to the Clause's restrictions." *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 566 n.70 (S.D.N.Y. 2019); *see also City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019) (there is "no reason why the addition of an agency middleman either expands or contracts Congress's power to 'provide for the . . . general Welfare'" (quoting U.S. Const. art. I, § 8, cl. 1)); *California*, 808 F. Supp. 3d at 310 n.2 (same). Courts routinely apply this principle on challenges to agency-imposed funding conditions. *See, e.g.*, *Illinois*, 801 F. Supp. 3d at 94–96 (agency-imposed conditions on FEMA funds violated the Spending Clause); *City & Cnty. of San Francisco v. Trump*, No. 25-cv-01350, 2026 WL 145874, at *11–13 (N.D. Cal. Jan. 20, 2026). Defendants' claim to executive power unchecked by the limitations of the Spending Clause is therefore unsupported by law. *See, e.g., City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (agencies possess only the power that is "authoritatively prescribed by Congress").

**2.     The Challenged Conditions are unconstitutionally vague.**

Conditions on federal funding must be unambiguous. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). This "clear notice" requirement ensures that states understand

5

the terms of the bargain, so they can weigh "the consequences of their participation." *Id*. at 17, 25; *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). Defendants seek to dodge the clear notice requirement entirely, arguing that so long as States are *aware* of the condition with which they are required to comply, there is no constitutional violation no matter how vague or unclear the condition may be. The Supreme Court has rejected this view. *Arlington*, 548 U.S. at 296 (holding a state must both be aware of and able to ascertain the condition's requirements). Rather, when imposing a condition, an agency must ensure that a state can "ascertain what is expected of it." *Pennhurst*, 451 U.S. at 17.

Defendants next argue that because Plaintiff States did not challenge the portion of the 2026 General Terms and Conditions requiring compliance with antidiscrimination laws and regulations, the "policies" portion must not be vague. But that argument defies logic, as it is precisely *because* the terms "antidiscrimination laws" and "regulations" are not vague that Plaintiff States did not challenge those requirements. Antidiscrimination laws and regulations are a well-defined set, and Plaintiffs know exactly where to find them: in the U.S. Code and the Federal Register. Indeed, recipients of federal financial assistance are *obligated* to comply with federal civil rights laws. *See, e.g.*, 20 U.S.C § 1681(a). And state officials may review these laws and regulations prior to accepting USDA funding to ensure compliance. Moreover, states have complied with such laws and regulations for decades and have structured their programming accordingly. But state officials cannot assess compliance when USDA demands adherence to an open-ended set of unidentified and yet-to-be-written policies.

What matters is whether the text is unambiguous such that states can understand their obligations. *Arlington*, 548 U.S. at 296 (explaining a court "must view" the condition "from the perspective of a state official" deciding whether to accept the condition and "ask whether such a

state official would clearly understand" the obligation); *see also Illinois*, 801 F. Supp. 3d at 96 ("[A]mbiguity deprives the states of the ability to make informed decisions, rendering the conditions constitutionally invalid."). Even now, Defendants provide no clarity on what they mean by applicable "policies," which policies apply, where Plaintiffs States might find those policies, and whether Defendants retain the ability to impose whatever future policies they wish. These vagueness concerns are compounded by the fact that Plaintiff States have their own social policies and are left to guess whether an undefined USDA "policy" (including future policies) may pose a conflict. This bind is exactly what *Pennhurst* sought to avoid in protecting state sovereignty. And the Policy Condition applies to the entirety of a recipient's program, amplifying the guesswork required of the Plaintiff States.

Defendants observe that they are not required to list every factual instance or define every term or provide "perfect" clarity. Opp. 8, 10. No one is asking them to do that. Nor is Defendant's cited case, *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), support for Defendants' broad demand of compliance with unidentified agency-crafted antidiscrimination policies, including ones that do not yet exist. There, the Ninth Circuit found that where recipients of federal funding were prohibited from "substantially burden[ing] the exercise of religion absent a showing that the burden is the least restrictive means of serving a compelling government interest," the fact that "the least restrictive means standard" could be unpredictable "d[id] not weaken the express conditional language." *Id*. at 1067. Here, the question is not, what *conduct* runs afoul of the "policies," but what are the policies?

Defendants' response to the vagueness of the other three Challenged Conditions is similarly flawed. They argue they provided a definition of "gender ideology" and "depriv[ing] women and girls of fair athletic opportunities" by incorporating executive orders, but those EOs only add to

the vagueness of those phrases. *See* Opp. 10; (Doc. No. 43 at 11–13). Furthermore, Defendants provide no limiting principles as to the meaning of terms and phrases like "promote," "directed towards," or "provide incentives," leaving state officials unable to "clearly understand" which state activities USDA believes States must modify to avoid losing funds. *See Arlington*, 548 U.S. at 296. And Defendants simply ignore altogether the vagueness in the Immigration Condition, waiving any defense of the constitutionality of that condition. *Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 645 (1st Cir. 2000) (failure to brief an argument constitutes waiver).

Finally, Defendants cite 2 C.F.R. § 200.340(a)(4), a regulation allowing termination of certain grants where the grant no longer effectuates agency priorities. Opp. 9. This regulation— certain applications of which are subject to a Spending Clause challenge, *see* First Amended Complaint at 75–76, *New Jersey v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-11816, (D. Mass. July 31, 2025), Dkt. No. 64—does not cure the conditions' vagueness. An agency's regulatory authority to cancel specific grants on a case-by-case basis says nothing about the ambiguity of policy conditions an agency seeks to prospectively impose on whole categories of federal funds. And, even accepting Defendants' argument that the regulation presupposes that an agency can set policy priorities, those priorities must be related to the purposes of the funding program at issue. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018) ("Absent congressional authorization, the Administration may not withhold properly appropriated funds in order to effectuate its own policy goals."). The Spending Clause requires that conditions be "unambiguous[]" so that a state can "ascertain what is expected of it." *Pennhurst*, 451 U.S. at 17. And the Challenged Conditions are anything but unambiguous.

### 3.    The Challenged Conditions are unrelated to USDA's programming.

Defendants also fail to show that the Challenged Conditions meet the Spending Clause's relatedness requirement. Defendants acknowledge that the Challenged Conditions must bear

"some relationship" to the funding program's purpose, yet they point to no such relationship between any of the Challenged Conditions and any of USDA's programs. The Challenged Conditions cannot satisfy the relatedness requirement because USDA seeks to impose conditions across *all* of its programs. The Conditions "lack the necessary tailoring" to satisfy the Spending Clause's relatedness requirement and must be stricken. *Illinois*, 801 F. Supp. 3d at 96.[1]

Moreover, even if USDA had taken a more tailored approach, it would fail here. These programs involve purposes such as "promot[ing] a sound and prosperous agricultural and rural life as indispensable to the maintenance of maximum employment and national prosperity and security," 7 U.S.C. § 361b, and "decreas[ing] the cost of conducting restoration projects involving vegetation removal on federal lands and Tribal lands." Ex. 89[2] at 3. Defendants cannot articulate any relationship between programs like this and women's sports, diversity, gender, or citizenship status.

### 4.      The Challenged Conditions are unconstitutionally coercive.

Defendants do not contest that they themselves view this funding as "vast" and "critical." *See* (Doc. No. 1 at ¶ 1). And they have not ruled out that they may enforce the Challenged Conditions on nutrition assistance programs, the loss of which would devastate the lives of children and families in the Plaintiff States. Defendants also now concede that the "goal" of the Challenged

---

[1] Plaintiffs do not contest that USDA has statutory authority to require recipients of federal funds to comply with antidiscrimination laws and regulations. *See* 42 U.S.C. § 2000d-1; 20 U.S.C. § 1682. However, as Plaintiffs argued, and Defendants failed to rebut, USDA never went through the required notice and comment to *reinterpret* the antidiscrimination laws, *infra* 18-19. Plaintiffs' compliance with such laws and regulations is wholly unrelated to the question of whether they also must comply with an open-ended set of agency-crafted policies, regardless of how those polices may eventually comport or conflict with established regulatory and legal guidance. Defendants also state that they are just prohibiting the use of funds beyond their statutory purpose. Opp. 11. But this is wrong. The Challenged Conditions would apply when funds are used for their intended purpose, but USDA claims they are also used to "promote gender ideology" or directed at programs that "provide incentives for illegal immigration."

[2] Citations herein to "Ex. __" are to the Declaration of Nita K. Klunder dated April 20, 2026.

Conditions is to solve the "problem" of Plaintiff States' independent policies. Opp. 15–17. This plan is precisely the kind of "gun to the head" the Constitution forbids. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012) ("*NFIB*") (plurality opinion).

Defendants dispute this by arguing the anti-coercion principle only applies to *new* programs. Opp. 12. But the Spending Clause includes no such limitation, nor has case law imposed one. To the contrary, *NFIB* involved modifications to existing Medicaid programs, just as Defendants seek to impose new conditions on preexisting funding programs. *NFIB*, 567 U.S. at 579–80 (plurality opinion); *see also Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 179 (D.C. Cir. 2015) (noting as concerning "a *new* condition that had not been part of the original program") (emphasis in original). Moreover, at least one of the Challenged Conditions, the Policy Condition, applies beyond the use of the specific federal funding provided, compounding the coercion problem. *See Mayhew v. Burwell*, 772 F.3d 80, 88 (1st Cir. 2014) (noting as problematic "a condition on the receipt of funds that did not govern the use of those funds").

Lastly, Defendants callously assert that cutting off billions falls short of the "scope of the threatened loss" required for a coercion claim. Opp. 12. But they misstate the law and ignore the facts. Courts assess the scale of the loss of federal funding for the program, and the effect the loss would have on the program budget and the state's overall budget. *See Miss. Comm'n*, 790 F.3d at 178. Here, Plaintiffs would lose all USDA funding, and USDA funding constitutes all or nearly all of the funding for many programs. For example, Illinois received over $1 billion in Child Nutrition Program funds in 2025, 99% of the state education agency's overall funding for food programs. (Doc. No. 44-24 at ¶ 8). A threat to withhold "essential" funds, "particularly where state budgets are already committed . . . amounts [to] economic dragooning." *Illinois*, 801 F. Supp. 3d at 96 (internal quotation marks and citations omitted). By "pressuring the States to accept policy

changes," USDA is unlawfully coercing the Plaintiff States. *NFIB*, 567 U.S. at 580 (plurality opinion).

**B.       The promulgation of the Challenged Conditions was arbitrary and capricious.**

Plaintiff States are also likely to prevail on their APA challenge because the promulgation of Challenged Conditions is subject to the APA's requirements, which USDA failed to meet. Agencies must take a measured approach when shifting policy. This includes considering reliance interests and alternative courses of action that respect such interests and providing reasoned explanations before acting. USDA did none of this in announcing the Challenged Conditions.

**1.       The promulgation of the Challenged Conditions is subject to APA review.**

Defendants first suggest a threshold barrier to Plaintiff States' APA claims, arguing the promulgation of the Challenged Conditions was "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2), citing the authorizing statutes for two grant programs. Opp. 13–14. That argument fails for multiple reasons. First, USDA did not just proclaim the conditions as to these particular programs; it imposed the Challenged Conditions as standard terms across-the-board. The Court can plainly adjudicate the legality of that decision, given that Defendants have identified no statute that could be read to confer on USDA the "discretion" to attach agency-wide limitations to federal funds. *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 18 n.5 (1st Cir. 2020) (distinguishing, in § 701(a)(2) context, between an "agency-wide policy" not committed to agency discretion by law and discretionary hiring decisions made by the agency).

But even as to the two programs cited in the brief, Defendants' § 701(a)(2) argument fails. Section 701(a)(2) is read "quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (citation

11

modified), and Defendants bear the "burden" of "rebut[ting] the presumption that agency action is judicially reviewable," *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007). Defendants' argument rests primarily on *Lincoln v. Vigil*, 508 U.S. 182 (1993), *see* Opp. 13, a case that has no bearing here. *Vigil* involved an agency's allocation of funds to a program from unrestricted lump-sum appropriations. *See* 508 U.S. at 186–87. Because the relevant statutes "d[id] not so much as mention" the defunded program and its replacement program "clearly f[ell] within the [agency's] statutory mandate," the decision to defund it was unreviewable. *Id.* at 194. Courts have thus read *Vigil* to preclude review only where Congress does not provide even a "statutory reference point" by which to assess the legality of an agency's action. *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 752 (D.C. Cir. 2002); *accord Illinois*, 801 F. Supp. 3d at 91.

Here, unlike *Vigil,* USDA did not create any of the at-issue programs. Congress did, with statutes that provide the requisite "statutory reference point" to trigger APA review. *Milk Train*, 310 F.3d at 752; *see, e.g.*, 16 U.S.C. § 2106(b)(3) (to "organize, train, and equip local firefighting forces"); 7 U.S.C. § 1621 (to provide for "continuous research to improve the marketing, handling, storage, processing, transportation, and distribution of agricultural products").

### 2. Neither the goal of putting "America first" nor USDA's commitment to "agency priorities" provide a sufficient explanation for USDA's action.

Because the APA applies to Defendants' decision to shift policy regarding its administration of federal funds, the agency "must show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The agency must show a "rational connection between the facts found and the choice made." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (internal quotation marks omitted). The action must be both "reasonable and reasonably explained." *Id*. (internal quotation marks omitted).

12

Here, in contrast, the choice made by Defendants was both unexplained and drastic. Plaintiff States are now required to discern what kind of changes USDA expects them to make to state policy (without *any* explanation as to USDA's demands) and must navigate how to abruptly make the required changes (again, without explanation), some of which could involve changes to longstanding state legislation. If Plaintiff States seek to avoid such changes, they risk losing funding and seeing children go without food, crops fall into disarray, and critical agricultural and rural economic programs shuttered. USDA's explanation for this disruption to the status quo is simply that it wants to "put America first." Opp. 15. That phrase, which provides no substantive or contextual meaning here, cannot possibly constitute a "reasoned explanation" for altering a funding landscape involving billions of dollars.

USDA's only other purported "explanation" for the Challenged Conditions is that they "further USDA's policy priorities." Opp. 15. This, too, is generic and boilerplate, and falls short of an actual explanation for the agency's action. The APA requires the agency to provide a discussion regarding a "rational connection" between some set of concerning facts and the action the agency now takes. *Ohio*, 603 U.S. at 292. There is nothing in the record like this—in fact, Defendants have not provided this Court with any evidentiary support at all. Furthermore, USDA's reliance on its own "policy priorities" to justify its action is further evidence of USDA's unlawfully expansive understanding of executive power, which is entirely unsupported by law.

### 3. USDA's intentionally disruptive approach violates the APA.

Finally, even if USDA offered more than generalities to explain its drastic course of action, the agency has now conceded it completely ignored Plaintiff States' reliance interests and entirely failed to consider any alternative courses of action that would be less disruptive to the status quo. These failures are independent reasons for concluding USDA's roll out of the Challenged Conditions was arbitrary and capricious.

13

As *Dept' of Homeland Sec. v. Regents of the U.C.* plainly holds, when an agency changes course, "it *must* be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." 591 U.S. 1, 30 (2020) (citation modified) (emphasis added). It is arbitrary and capricious "to ignore such matters." *Id*. Yet, USDA did exactly that when upending decades-long partnerships with the States without considering the disruption that will result from its unprecedented campaign to reshape social policy. *Illinois*, 801 F. Supp. 3d at 94 (agency violated APA by failing to "evaluate the states' reliance interests" where "the record show[ed] that states have structured their budgets . . . for decades around consistent federal support"). Defendants deny that any reliance interests are at stake here simply because USDA has not yet "cut off any State's funding." Opp. 14. But such funding cuts are *imminent*, with deadlines to accept the Challenged Conditions extended only to May 7, 2026. Ex. 86 ¶ 5; Ex. 88 ¶ 6. The APA requires USDA to consider such catastrophic consequences *before* acting. *R.I. State Council of Churches v. Rollins*, 808 F. Supp. 3d 370, 382 (D.R.I. 2025) (disregarding reliance interests engendered by SNAP benefits programming is "patently arbitrary and capricious"). Defendants' failure is "compounded by the vague and confusing language in the challenged conditions, which makes compliance a nearly impossible-to-achieve moving target." *Illinois*, 801 F. Supp. 3d at 94. USDA also argues that Plaintiff States lacked reliance interests because they were on "explicit notice that even existing awards may be terminated if they 'no longer effectuate[] the program goals or agency priorities." Opp. 14 (citing 2 C.F.R. § 200.340(a)(4)). But "Section 200.340 does not create a default ability by the federal government to terminate an award over the award recipient's objection, whenever an agency determines its priorities have changed." *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624, 670 (S.D.N.Y. 2025).

Furthermore, USDA concedes that it did not consider any "alternatives" that were "within

14

the ambit of the existing" landscape. *Regents*, 591 U.S. at 30. Defendants now argue there is no more "targeted" or "measured" approach to pursuing its policy priorities than its choice here—across-the-board conditions, hastily promulgated with vague language, without sufficient guidance, without any consideration of the consequences of disrupting essential programing on which millions rely. Opp. 16. This is plainly untrue. USDA could craft particular conditions for particular programs, appropriately related to each program's purpose. *See Illinois*, 801 F. Supp. 3d at 93–94 ("The indiscriminate application of these conditions across the entire spectrum of DHS-administered grants demonstrates the absence of tailoring and the failure to consider whether such conditions are appropriate for particular programs."). And other agencies across all administrations have followed the APA and pursued policy changes through new interpretations of existing antidiscrimination law through the notice-and-comment procedures. *See* (Doc. No. 43 at 27–29). That did not happen here, as Defendants do not contest. *See infra* at 18–19. Defendants' approach is evidence of arbitrary and capricious decision making.

Finally, agencies must "consider an important aspect of the problem" when changing course, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). When an agency requires a State to violate its own "duly enacted laws," that agency's "failure to give any thought to this problem reflects a lack of reasoned decisionmaking." *Colorado v. Trump*, No. 25-cv-03428, 2026 WL 734048, at *16 (D. Colo. Mar. 16, 2026). Here, USDA has in fact conceded that the very "purpose" of the Challenged Conditions was to create conflicts with such laws. Opp. at 15–16. This *intentional* disruption of the status quo in the Plaintiff States violates the limits on agency action imposed by the APA.

**C.     The Policy and Immigration Conditions exceed USDA's statutory authority.**

Defendants also violate the APA by falling short of the basic principle that USDA is "charged with administering congressional statutes," which means that "[b]oth their power to act

15

and how they are to act is authoritatively prescribed by Congress." *City of Arlington*, 569 U.S. at 297. Defendants identify no such authority to impose the Policy and Immigration Conditions and instead make arguments that are either unavailing, inaccurate, or insufficient. Opp. 16.[3]

USDA lacks any general authority to impose the Policy and Immigration Conditions and therefore must have statutory authority to impose them on *each* of the programs it administers. Defendants contend the funding streams at issue in this case are either "nutrition assistance programs" or discretionary grants, Opp. 1–2, but this is wrong—this case involves numerous other USDA-administered formula funds. The "nutrition assistance programs" provide funding based on non-discretionary variables such as population and number of meals served. But other USDA-administered programs involve prescriptive formulas based on defined variables. *See, e.g.*, 7 U.S.C. §§ 361c (prescribing how Hatch Act funds, which provide funds to state land-grant institutions, will be distributed to the States), 361g (granting Secretary the limited authority to "ascertain" whether a State is "entitled to receive its share of the annual appropriations" based on the submission of a plan of work for which the statute lays out the requirements). Because these authorizing statutes direct USDA to provide States with funds according to prescribed formulas, the Policy and Immigration Conditions exceed USDA's statutory authority.[4]

Likewise, USDA administered block grants provide discretion to the *States*, not the Secretary. For example, Maine and Massachusetts have near final agreements with USDA to receive a total of over $100 million from a disaster relief block grant. (Doc. No. 44-31 at ¶¶ 47-

---

[3] Defendants look only to a funding program's authorizing statute in analyzing the excess of statutory authority claim, Opp. 16. But Plaintiffs contend that *no* statute conveys the authority to impose the Policy and Immigration Conditions. This is precisely why Plaintiffs do not challenge requirements to comply with federal antidiscrimination laws and properly promulgated regulations.

[4] Defendants ignore these substantive arguments and instead argue the challenge regarding School Lunch, SNAP, and WIC is not ripe. This argument fails, as discussed above at 1–4.

52; Doc. No. 44-40 at ¶¶ 41-52). The American Relief Act of 2024 makes $220 million available to "eligible States" whose eligibility is statutorily prescribed. Pub. L. No. 118-158, 138 Stat. 1722, 1728 (2024). Contrary to Defendants' assertion of unbounded power to impose conditions, the statute permits USDA to "work with eligible States on any necessary terms and conditions… fully taking in account the needs of each State…[and] any such terms and conditions may not impose additional costs on producers." *Id.*

Defendants claim to have statutory authority to impose the Conditions on two USDA-administered programs, but ignore that Plaintiffs seek "an injunction against enforcement of the Challenged Conditions as to all funding administered by USDA." (Doc. No. 1 at ¶ 47). Furthermore, those two statutes allow only the imposition of limited conditions, none of which are remotely similar to the Challenged Conditions. 7 U.S.C. § 1621 note ("Secretary… shall make grants to [eligible] States;" eligibility is based on the submission of a State plan, the requirements for which are enumerated in the statute; Secretary is charged with "ensur[ing] that the State plan would carry out the purpose of the grant program" specified in the statute); 16 U.S.C. §§ 2106(b) (Secretary permitted to prescribe conditions in the context of meeting four statutorily mandated goals relating to fire prevention, control, and suppression) and 2106(e) (Congress authorized the appropriation of funds for fire prevention, control, and suppression and required that "not less than $100,000 shall be made available to each State").

Finally, while agencies have some discretion in disbursing funds under competitive grants' statutory framework, they must exercise that discretion within Congress' defined parameters. "When Congress limits the purpose for which a grant can be made, it can be presumed that it intends that the dispersing agency make its allocations based on factors solely related to the goal of implementing the stated statutory purposes in a reasonable fashion, rather than taking irrelevant

17

or impermissible factors into account." *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985). The Challenged Conditions do not fit within Congress's defined parameters for the competitive grants.

**D.      The Immigration and Gender Conditions are contrary to law.**

Defendants argue that the Immigration and Gender Conditions cannot be contrary to law because the General Terms and Conditions provide a mechanism for resolving inconsistencies that prioritizes federal statutes. Opp. 17; (Doc. No. 1-1 at § 1.2). Their logic does not follow. The existence of a mechanism to potentially "dissipate" conditions that are contrary to law does not convert those conditions into lawful ones. USDA seems to suggest that the Court need not determine whether the Immigration and Gender Conditions are contrary to law because USDA can make that determination and resolve it through dissipation. Ignoring for the moment that USDA has already determined that the Immigration and Gender Conditions do not conflict with federal law, Opp. 17, the APA requires *courts* "to set aside federal agency action that is 'not in accordance with law.'" *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (quoting 5 U.S.C. § 706(2)(A)). No mechanism in the General Terms and Conditions can replace this Court's review.

**E.      USDA waived any defense of its failure to subject the Gender and Sports Conditions to notice and comment.**

USDA provides no response whatsoever to Plaintiff States' argument that it violated 5 U.S.C. § 706(2)(D) by failing to comply with the required APA notice and comment procedures before issuing the Gender and Sports Conditions, thereby waiving any defense to that argument. (Doc. No. 43 at 27–29). The First Circuit routinely deems arguments waived when they are not raised in briefing. *See King v. Town of Hanover*, 116 F.3d 965, 970 (1st Cir. 1997) (noting that litigants must "spell out [their] arguments squarely and distinctly, or else forever hold [their] peace") (citation omitted). USDA has therefore waived any opposition to Plaintiff States' APA notice-and-comment argument, cannot rely on Title IX to justify the Gender and Sports Conditions

going forward in this litigation, and indeed has not identified any statutory authority for such conditions.

**III.    Plaintiff States have already been harmed by the Challenged Conditions.**

In their opening brief, Plaintiff States identified numerous programs in which the harm posed by the Challenged Conditions was already patent. (Doc. No. 43 at 30–34). Defendants incorrectly argue that the choice between forgoing federal funding and accepting the Challenged Conditions cannot constitute irreparable harm. Opp. 18–19. Being forced to accept unlawful conditions is a constitutional injury which is irreparable. *Martin Luther King Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 889–90 (W.D. Wash. 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). The other option available to Plaintiff States, refusing the Challenged Conditions, is no better. USDA has now indicated that Plaintiff States must either accept the Challenged Conditions without reservation or lose out on USDA funding.

Plaintiff States face this untenable choice imminently. As of April 16, 2026, USDA has agreed to postpone any deadline to accept or reject an agreement with the General Terms and Conditions until May 7, 2026. Yet in the interim, Plaintiff States can neither finalize the affected funding agreements nor receive vital USDA funds. For example, Rhode Island's Cooperative Agricultural Pest Survey ("CAPS") expired on December 31, 2025. Ex. 83 ¶ 3. Rhode Island submitted its completed cooperative agreement accompanied by a reservation of rights; USDA rejected the reservation of rights. *Id.* ¶ 7; Exs. 84–85. Though Rhode Island can cover its costs up to 20% of the award so long as the award is finalized by June 30, they have already spent the 20%. Ex. 83 ¶¶ 8–9. This program "serves as a critical line of defense against the introduction of potentially devastating pests," is entirely federally funded, and the funds support a full-time employee and a contractor. (Doc. No. 44-64 at ¶¶ 44, 48). The looming funding lapse presents challenges for retaining experienced staff. Ex. 83 ¶ 10.

19

USDA claims that economic loss cannot be irreparable harm. Opp. 19. This is wrong. *See King Cnty.*, 785 F. Supp. 3d at 890 ("budgetary uncertainty" may constitute irreparable harm). Further, Plaintiffs States' declarations establish harms beyond economic loss. For example, the Challenged Conditions impair Plaintiff States' ability to maintain firefighting capacity, meaning State residents face potential risks to their lives and safety. *See, e.g.,* (Doc. No. 44-10 at ¶ 31; Doc. No. 44-36 at ¶ 20; Doc. No. 44-47 at ¶ 11). Plaintiff States also face layoffs, contract terminations, and the elimination of USDA foods from the food security infrastructure. *See, e.g.,* (Doc. No. 44-49 at ¶ 28). These are not monetary harms that can be remedied at final judgment. *See Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277, 320 (D. Mass. 2025) ("Threats to [human] lives represent[] a dire risk of a quintessentially irreparable nature."). By contrast, Defendants' assertion that USDA would be harmed by an injunction is entirely unsupported by evidence. Opp. 19–20. The balance of harms and equities weigh overwhelmingly in favor of a preliminary injunction.

### CONCLUSION

The Court should preliminarily enjoin Defendants from applying and enforcing the Challenged Conditions to Plaintiff States and their instrumentalities and subdivisions and enter the proposed order filed on the docket at ECF 42-1.[5]

The parties have conferred and are both available the week of April 27, 2026, should the Court wish to hear oral argument.

---

[5] Defendants have incorrectly suggested that this Court may not enjoin Defendants from "withholding or terminating federal funding." Opp. 20. Plaintiffs' proposed order mirrors the injunctive relief enjoining the federal government ordered by other judges within the First Circuit. *See California v. U.S. Dep't of Transp.*, 788 F. Supp. 3d 316, 324 (D.R.I. June 19, 2025) (enjoining defendants from "withholding or terminated federal funding based on the Immigration Enforcement Condition"); *Illinois v. Fed. Emergency Mgmt. Agency*, No. 25-cv-206, 2025 WL 2908807, at *1 (D.R.I. Oct. 14, 2025) (enforcing permanent injunction enjoining defendants from "enforcing against Plaintiff States . . . the contested conditions").

April 20, 2026

Respectfully submitted,

ANDREA JOY CAMPBELL
  *Attorney General of Massachusetts*

KWAME RAOUL
  *Attorney General of Illinois*

By: */s/ Nita K. Klunder*
Nita K. Klunder (BBO No. 689304)
  *State Trial Counsel*
Hannah C. Vail (BBO No. 698577)
Jak Kundl (BBO No. 713951)
  *Assistant Attorneys General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2394
Nita.Klunder@mass.gov
Hannah.Vail@mass.gov
Jak.Kundl@mass.gov

By: */s/ Vikas Didwania*
Vikas Didwania*
Aleeza Strubel*
  *Complex Litigation Counsels*
Michael M. Tresnowski*
  *Assistant Attorney General*
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(312) 814-3000
Vikas.Didwania@ilag.gov
Aleeza.Strubel@ilag.gov
Michael.Tresnowski@ilag.gov

*Counsel for the Commonwealth of Massachusetts*

*Counsel for the State of Illinois*

ROB BONTA
  *Attorney General of California*

JOSHUA L. KAUL
  *Attorney General of Wisconsin*

*/s/ Brian Bilford*
BRIAN BILFORD*
Deputy Attorney General
MICHAEL L. NEWMAN*
Senior Assistant Attorney General
JOEL MARRERO
Supervising Deputy Attorney General
ALYSSA ZHANG*
LUKE FREEDMAN*
DANIEL SHEEHAN*
Deputy Attorneys General
Brian.Bilford@doj.ca.gov
Michael.Newman@doj.ca.gov
Joel.Marrero@doj.ca.gov
Alyssa.Zhang@doj.ca.gov
Luke.Freedman@doj.ca.gov
Daniel.Sheehan@doj.ca.gov

By: */s/ Lynn K. Lodahl*
Lynn K. Lodahl*
  *Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, WI 53707
(608) 264-6219
lynn.lodahl@wisdoj.gov

*Counsel for the State of Wisconsin*

*Counsel for Plaintiff State of California*

21

PHILIP J. WEISER
  *Attorney General of Colorado*

By: */s/ Sam Wolter*
Sam Wolter*
  *Assistant Attorney General*
Kristopher Brambila*
  *Senior Assistant Attorney General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
Samuel.wolter@coag.gov
Kristopher.brambila@coag.gov

*Counsel for the State of Colorado*


WILLIAM TONG
  *Attorney General of Connecticut*

By: */s/ Andrew M. Ammirati*
Andrew M. Ammirati*
  *Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5090
Andrew.Ammirati@ct.gov


*Counsel for the State of Connecticut*

KATHLEEN JENNINGS
  *Attorney General of the State of Delaware*

By: */s/ Ian R. Liston*
Ian R. Liston*
  *Director of Impact Litigation*
Rose E. Gibson*
Vanessa L. Kassab*
  *Deputy Attorneys General*
Delaware Department of Justice

JENNIFER DAVENPORT
  *Attorney General for the State of New Jersey*

By: */s/ Jessica L. Palmer*
Jessica L. Palmer*
  *Assistant Attorney General*
Dianna Shinn*
Jonathan Allen*
  *Deputy Attorneys General*
New Jersey Office of the Attorney General
Division of Law – Environmental & Clean Energy Practice Group
25 Market Street
Trenton, New Jersey 08625-0093
(609) 696-4607
jessica.palmer@law.njoag.gov
dianna.shinn@law.njoag.gov
jonathan.allen@law.njoag.gov

*Counsel for the State of New Jersey*


RAÚL TORREZ
  *Attorney General of New Mexico*

By: */s/ Amy Senier*
Amy Senier (BBO No. 672912)
  *Senior Counsel*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-490-4060
asenier@nmdoj.gov


*Counsel for the State of New Mexico*

LETITIA JAMES
  *Attorney General for the State of New York*

By: */s/ Natasha M. Korgaonkar*
Rabia Muqaddam*
  *Chief Counsel for Federal Initiatives*
Natasha M. Korgaonkar (BBO 704129)
Matthew Faiella*
  *Special Counsel*
28 Liberty St.

22

820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Counsel for the State of Delaware*


ANNE E. LOPEZ
  *Attorney General for the State of Hawaiʻi*

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
  *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
  *Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*


BRIAN L. SCHWALB
  *Attorney General for the District of
  Columbia*

By: */s/ Samantha Hall*
Samantha Hall*
  *Assistant Attorney General*
Office of the Attorney General
for the District of Columbia
400 Sixth Street NW
Washington, D.C. 20001
(202) 788-2081
samantha.hall@dc.gov

*Counsel for the District of Columbia*

New York, NY 10005
(212) 416-6557
rabia.muqaddam@ag.ny.gov
Natasha.korgaonkar@ag.ny.gov
matthew.faiella@ag.ny.gov

*Counsel for the State of New York*


DAN RAYFIELD
  *Attorney General for the State of Oregon*

By: */s/ Leanne Hartmann*
Leanne Hartmann, MA BBO #667852
  *Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov

*Counsel for the State of Oregon*


PETER F. NERONHA
  *Attorney General of Rhode Island*

By: */s/ Paul T.J. Meosky*
Paul T.J. Meosky*
    *Special Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2064
pmeosky@riag.ri.gov

*Counsel for the State of Rhode Island*

23

ANTHONY G. BROWN
  *Attorney General for the State of Maryland*

By: */s/ James C. Luh*
James C. Luh*
  *Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.maryland.gov

*Counsel for the State of Maryland*


AARON M. FREY
  *Maine Attorney General*

By: */s/ Katherine W. Thompson*
Katherine W. Thompson*
  *Special Counsel*
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov

*Counsel for the State of Maine*


DANA NESSEL
  *Attorney General of Michigan*

By: */s/ Neil Giovanatti*
Neil Giovanatti*
  *Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*


CHARITY R. CLARK
  *Attorney General of Vermont*

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
  *Solicitor General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Counsel for the State of Vermont*


JAY JONES
  *Attorney General of Virginia*

By: /s/ Tillman J. Breckenridge
Tillman J. Breckenridge*
  *Solicitor General*
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-2071
Fax: (804) 786-1991
solicitorgeneral@oag.state.va.us

*Counsel for the Commonwealth of Virginia*


NICHOLAS W. BROWN
  *Attorney General of Washington*

*By: /s/ Zane Muller*
Zane Muller*
Erica Franklin*
  *Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
Zane.Muller@atg.wa.gov
Erica.Franklin@atg.wa.gov

*Counsel for the State of Washington*

24

KEITH ELLISON
  *Attorney General for the State of Minnesota*

  By: */s/ Brian S. Carter*
Brian S. Carter*
*Special Counsel*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-7403
Brian.carter@ag.state.mn.us

*Counsel for the State of Minnesota*


*\*pro hac vice admitted, pending, or
forthcoming*

25