**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS, et al.,

      Plaintiffs,

          v.

U.S. DEPARTMENT OF AGRICULTURE, et al.,

      Defendants.

Case No. 1:26-cv-11396-MJJ

**PLAINTIFF STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

    I.     USDA's funding supports critical programs impacting millions of people. ........... 1

    II.    USDA issues the Challenged Conditions. ................................................................. 2

    III.   USDA signals its intent to vigorously enforce the Challenged Conditions. ........... 4

    IV.   The Challenged Conditions impose harms on the States ....................................... 5

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ...................................................................................................................... 7

    I.     Plaintiffs have standing. ......................................................................................... 7

    II.    Plaintiffs have plausibly alleged that the Challenged Conditions violate the Spending Clause (Count I). ................................................................................... 9

        a.      The allegations plausibly suggest that the Challenged Conditions are unconstitutionally ambiguous. ................................................................. 10

        b.      The allegations plausibly suggest that the Challenged Conditions are wholly unrelated to USDA programs. ................................................................. 12

        c.      The allegations plausibly suggest that the Defendants have leveraged billions of dollars in order to force Plaintiffs to adopt Defendants' policies. ...................................................................................................... 13

        d.      Plaintiffs may proceed under both the APA and the Spending Clause. .... 15

    III.   Defendants have no basis to dismiss the APA claims. ......................................... 16

        a.      Defendants' attempt to dismiss Plaintiffs' APA claims must be rejected because they have failed to produce the administrative record. ............... 16

        b.      Plaintiffs have alleged facts which plausibly suggest the Rollins Memo and the subsequent application of the Challenged Conditions to USDA funding programs were arbitrary and capricious, in violation of the APA (Count II). ...................................................................................................... 17

        c.      Plaintiffs have alleged facts which plausibly suggest the Rollins Memo and Challenged Conditions are contrary to law and in excess of the Defendants' statutory authority (Counts III and VI). ................................................... 21

        d.      Plaintiffs have alleged facts which plausibly suggest the Defendants issued an interpretive rule in violation of the APA's notice and comment requirements (Count IV). .......................................................................... 24

        e.      Plaintiffs have plausibly alleged that the Defendants violated the APA by exceeding their constitutional authority (Count V). ................................. 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ............................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 6, 13

*Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013) ......................................................... 6, 16

*Becker v. Fed. Election Comm'n*, 230 F.3d 381 (1st Cir. 2000) ..................................... 8

*Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3 (1st Cir. 2021) ............................................ 9

*California v. Mullin*, No. CV 25-13829-LTS, 2026 WL 1649160 (D. Mass. June 8, 2026) ........ 22

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ................................................... 10, 21

*City of Fresno v. Turner*, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025) .......................... 11

*City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020) .............................................. 22

*Cowels v. FBI*, 327 F. Supp. 3d 242 (D. Mass. 2018) .................................................. 15

*Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022) ................................. 22

*DHS v. Regents of the University of California*, 591 U.S. 1 (2020) ........................... 19, 24

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ............................................ 19

*FBI v. Fikre*, 601 U.S. 234 (2024) ............................................................................... 9

*FCC v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 513 (2009) .............................................. 17

*FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) ................................. 24

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ......................................... 16

*Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63 (1st Cir. 2014) ....................................... 6

*Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75 (D.R.I. 2025) ............ 14, 15, 18, 26

*Int'l Org. of Masters, Mates, & Pilots, ILA, AFL-CIO v. NLRB*, 61 F.4th 169 (D.C. Cir. 2023) . 21

*Kisor v. Wilkie*, 588 U.S. 558 (2019) ....................................................................... 21, 24

*La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355 (1986) .................................................. 22

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) ....... 18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......................................................... 8

*Massachusetts v. United States*, 435 U.S. 444 (1978) .................................................. 12

*Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138 (D.C. Cir. 2015) ......................... 14

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).. 18, 19, 20

*Nat. Res. Def. Council v. Morton*, 458 F.2d 827 (D.C. Cir. 1972) ................................. 19

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ................................... 13, 14

*Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) ................................... 11

*New York v. U.S. Dep't of Health and Hum. Servs.*, 414 F. Supp. 3d 475 (S.D.N.Y. 2019) ......... 10

*Nuclear Regul. Comm'n v. Texas,* 605 U.S. 665 (2025) ................................................................. 15

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ................................................... 10

*Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico*, 189 F.3d 1 (1st Cir. 1999)...... 6

*R.I. Coal. Against Dom. Violence v. Kennedy*, 812 F. Supp. 3d 180 (D.R.I. 2025) .......................11

*Robbins v. Reagan*, 780 F.2d 37 (D.C. Cir. 1985)........................................................................ 23

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ......................................................... 8, 22

*Tennessee v. Dep't of Educ.*, 104 F.4th 577, 609–13 (6th Cir. 2024) ........................................... 25

*Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026) ......................................................................... 7

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358 (1st Cir. 2001) ...................................................... 6, 9

*Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104 (D. Mass. 2021) ........................................ 21

*Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978) ............................................... 19

*Washington v. Fed. Emergency Mgmt. Agency*, 818 F. Supp. 3d 195 (D. Mass. 2025)................ 15

**Statutes**

16 U.S.C. § 2106.......................................................................................................................... 23

5 U.S.C. § 706 .............................................................................................................. 21, 22, 23, 24, 25

7 U.S.C. § 1621............................................................................................................................ 23

7 U.S.C. § 301 *et seq.* .................................................................................................................. 19

7 U.S.C. § 361b............................................................................................................................ 13

7 U.S.C. § 361c............................................................................................................................ 23

7 U.S.C. § 361g............................................................................................................................ 23

**Other Authorities**

Exec. Order 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025)................................................................. 3

Exec. Order 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025)................................................................. 3

Exec. Order 14,201, 90 Fed. Reg. 9279 (Feb. 5, 2025) .................................................................. 4

Exec. Order 14,218, 90 Fed. Reg. 10581 (Feb. 19, 2025).............................................................. 4

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 1, 6, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 6, 8, 13, 16, 17, 25

**Regulations**

2 C.F.R. § 200.340(a)(4) ...............................................................................................................11

## INTRODUCTION

For over a century, funding from the U.S. Department of Agriculture (USDA) has supported a federal-state partnership critical to the nation's welfare. Now, USDA threatens to transform these well-established funding streams into a blank check to underwrite the administration's social policy agenda. Specifically, USDA has launched an effort to impose its vision for a "Golden Age of Civil Rights" through the promulgation of new funding conditions. With these new conditions, USDA would force States to either take the agency's side in hotly contested debates over gender, diversity, and the availability of public services for non-citizens or lose billions of dollars of vital funding.

But the U.S. Constitution and the Administrative Procedure Act (APA) protect the States from overreaching federal agency action, including USDA's new funding conditions. First, USDA's approach runs afoul of the Spending Clause's proscription on vague, unrelated, and coercive funding conditions. Second, USDA violates the requirements of the APA that agency action be well-reasoned, within the limits of statutory authority, lawful, and procedurally proper. USDA met none of these requirements when imposing new conditions on Plaintiff States.

Defendants now seek to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Because Plaintiffs have sufficiently pleaded facts establishing standing to challenge USDA's actions and entitlement to relief under the Spending Clause and the APA, this Court should deny Defendants' motion.

## FACTUAL BACKGROUND

### I. USDA's funding supports critical programs impacting millions of people.

USDA's funding supports an extraordinary breadth of modern American life. For more than a century, USDA has partnered with Plaintiff States to feed hundreds of millions of Americans,

suppress and prevent fires, support local farmers and ranchers, conduct groundbreaking agricultural research, and carry out numerous other activities to ensure that America's farms and natural resources are secure and our residents are fed.

Plaintiff States receive over $74 billion annually from USDA, largely through statutory formulas or entitlements enacted by Congress. These funds support nutrition assistance programs administered through the Food and Nutrition Administration (FNA) (formerly FNS), including the Child Nutrition Programs, the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), and the Supplemental Nutrition Assistance Program (SNAP); forest protection and wildfire prevention programs; local agriculture programs; and programs supporting agricultural research and education in the agricultural sciences. *E.g.*, Doc No. 81 at 13-37.[1] Together, these programs directly benefit residents across the country, including individuals experiencing food insecurity, school children, pregnant women, low-income households, households facing emergencies, farmers, ranchers, foresters, and local communities. *Id.* at 12-13.

Plaintiff States have diligently administered these programs for decades without imposing limitations on the basis of race, gender identity, or citizenship status, unless otherwise required by federal law. This federal-state partnership has benefitted hundreds of millions of Americans and has operated for decades pursuant to congressionally enacted funding statutes.

II.   **USDA issues the Challenged Conditions.**

On December 31, 2025, USDA issued General Terms and Conditions (2026 Conditions) applicable to all recipients and subrecipients of USDA grants, cooperative grants, and mutual interest agreements. Doc No. 1-1; Doc No. 1-2. That same day, Secretary Rollins issued Secretarial

---

[1] As the parties agree that the First Amended Complaint is the operative document on Defendants' Motion to Dismiss, citations are to the First Amended Complaint. Per the Court's Standing Order Regarding Motion Practice, Plaintiffs cite to the exhibits filed with the original complaint.

Memorandum 1078-021 (Rollins Memo), directing all agency staff to "adopt and implement" the 2026 Conditions for "all future awards and for all significant modifications (as determined by [the Office of the Chief Financial Officer]) to existing and future awards, to the maximum extent consistent with law" within 45 days of the memorandum. Doc No. 1-3 at 3. The Rollins Memo defines "awards" as "grants, cooperative agreements, and other similar arrangements, including mutual interest agreements." *Id.* at 2. It further instructs agency staff to monitor noncompliance or otherwise face disciplinary action. *Id.* at 3.

The 2026 Conditions mark a sharp departure from the agency's prior practice. They impose new requirements on funding recipients, including Plaintiff States, in an effort to compel them to adopt the administration's policy priorities. Section 12.2[2] of the 2026 Conditions (Policy Condition) requires recipients to comply with all "Federal anti-discrimination… policies," including "without limitation" Exec. Order 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (Gender Ideology EO) and Exec. Order 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (DEI EO). The Gender Ideology EO declares it "the policy of the United States to recognize two sexes" and to reject the reality of gender identity. 90 Fed. Reg. at 8615. The DEI EO contrasts civil rights protections with the "adopt[ion] and active[] use [of] dangerous, demeaning, and immoral race- and sex-based preferences under the guise of so-called 'diversity, equity, and inclusion' (DEI)… that can violate the civil-rights laws of this Nation." 90 Fed. Reg. at 8633.

Section 13 of the 2026 Conditions "expressly incorporate[s]" twelve Executive Orders and directs recipients that "[w]hen incorporated into Federal awards, the recipient must comply with

---

[2] Unless otherwise indicated, the references to the Challenged Conditions will use the section numbering from the 2026 Conditions (Doc No. 1-1). The corresponding section numbers in the General Terms and Conditions for Mutual Interest Agreements, (Doc No. 1-2), will be noted in citations only.

EOs." Doc No. 1-1 at § 13; Doc No. 1-2 at § 12. Three funding provisions in Section 13, along with the Executive Orders they incorporate, impose particularly problematic and ambiguous restrictions on recipients. Section 13.5 of the 2026 Conditions incorporates the Gender Ideology EO and provides that "[n]o funding shall be used to promote gender ideology" (Gender Condition). Doc No. 1-1 at § 13.5; Doc No. 1-2 at § 12.6. Section 13.8 of the 2026 Conditions incorporates Exec. Order 14,201, 90 Fed. Reg. 9279 (Feb. 5, 2025) (Sports EO), and states that "[n]o funding shall be directed towards educational programs that deprive women and girls of fair athletic opportunities. No funding shall be directed towards male competitive participation in women's sports" (Sports Condition). Doc No. 1-1 at § 13.8; Doc No. 1-2 at § 12.9. And Section 13.10 of the 2026 Conditions incorporates Exec. Order 14,218, 90 Fed. Reg. 10581 (Feb. 19, 2025) (Open Borders EO) and provides that "[n]o funding shall be directed towards programs that allow illegal aliens to obtain taxpayer-funded benefits, provide public resources to meet the needs of illegal aliens, or provide incentives for illegal immigration by demonstrating the availability of public benefits" (Immigration Condition). Doc No. 1-1 at § 13.10; Doc No. 1-2 at § 12.11. The 2026 Conditions fail to provide guidance as to what conduct is prohibited by the Policy, Gender, Sports, or Immigration Conditions (together, Challenged Conditions).

### III.  __USDA signals its intent to vigorously enforce the Challenged Conditions.__

From the issuance of the Rollins Memo, directing USDA subagencies to apply the 2026 Conditions to all federal funding, USDA compounded these enforcement threats in a variety of ways, many of which continue unabated. At least one USDA sub-agency, the National Institute of Food and Agriculture, made publicly available its view of what actions USDA funding recipients should take to ensure substantive compliance with the 2026 Conditions. In a FAQ posted to its website, NIFA states, "Recent EOs prohibit DEI programs and preferences [and] prohibit gender

ideology…. *Recipients* must comply with these EOs by eliminating any prohibited DEI-related offices, titles, positions, duties, programs, and activities, as well as any prohibited promotion of gender ideology." Doc No. 81 at 48 (emphasis added).

Similarly, on December 10, 2025, NIFA hosted a training for grant recipients where staff provided an overview of new federal requirements, which included compliance with the EOs. Doc No. 81 at 48 n.41. The hour-long training indicated that NIFA "will request information about and examine specific efforts made by recipients to ensure elimination of any DEI related offices, titles, positions, programs and activities, as well as environmental justice and equity planning[.]" *Id.* During the training, NIFA staff further instructed that "compliance with best practices will entail revising civil rights training so as to update description of prohibited actions and to expunge DEI or equity or gender ideology based civil rights practices." *Id.*

On January 8, 2026, USDA sent an informal memorandum over email to all USDA employees announcing that a "Golden Age of Civil Rights is here." *Id*. at 49 (document available at Doc No. 44-1). That memorandum made clear that USDA intends to enforce its mandates not only "in all programs under its jurisdiction and within its workforce," but against all recipients of USDA funding. *Id.*

## IV. The Challenged Conditions impose harms on the States.

The imposition of the 2026 Conditions impose myriad severe harms upon Plaintiff States, forcing them to choose between acceding to illegal mandates that conflict with their own sovereign policies as States or forego billions of dollars of critical funding to feed hungry children and protect our Nation's resources and agricultural industry. Doc No. 1 at 63-67. Including the FNA funding streams—that is, "all awards" issued to "all recipients" of USDA funding as stated in the Rollins Memo—Defendants applied the 2026 Conditions to well over $300 million in funding to Plaintiff

States, threatening to withhold those funds unless Plaintiff States acceded to the 2026 Conditions. Doc No. 81 at 13-29.

**LEGAL STANDARD**

Under Fed. R. Civ. P. 12(b)(6), the court accepts all factual allegations in the complaint as true, construes reasonable inferences in the plaintiff's favor, and determines "whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68, 71 (1st Cir. 2014) (internal citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As to APA claims, however, the plausibility standard in reviewing a motion to dismiss does not apply because "[t]he focal point of APA review is the existing administrative record." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). Instead, final resolution of APA claims should await production of the administrative record. *See id.*

The court reviews a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) under the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *See Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico*, 189 F.3d 1, 13 n.10 (1st Cir. 1999). Upon consideration of such a motion, "the court must credit the plaintiff's well-pled factual allegations" and draw all reasonable inferences in the plaintiff's favor. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

## I.    Plaintiffs have standing.

Defendants argue that Plaintiff States' claims as to the application of the Challenged Conditions to the FNA programs are jurisdictionally defective, arguing the Plaintiff States never faced a credible threat relating to those programs. This argument fails for two reasons.

First, Defendants' standing argument fails because none of the causes of action in the complaint are specific to the FNA programs.[3] Rather, Plaintiff States' claims challenge the legality of USDA's actions across the board. Defendants cite no cases supporting their premise that they can carve up Plaintiff States' existing claims into component parts and then attack standing as to those severed parts only. For this same reason, even if Plaintiff States lacked standing (they do not) for the FNA programs, it would not matter, because Defendants do not dispute that Plaintiff States have injuries stemming from the application of the Challenged Conditions to all other USDA programs. Those injuries alone would provide Plaintiff States with the standing and jurisdictional basis to advance their claims. Accordingly, the Court need not reevaluate the precise scope of the appropriate remedy in this case to assess whether Plaintiffs have standing to assert each claim. *See Thakur v. Trump*, 176 F.4th 1187, 1196 (9th Cir. 2026) (the "jurisdictional inquiry is distinct from the scope of an injunction, which is based on the merits.") (cleaned up).

Second, even if Defendants were correct that the FNA programs create a jurisdictional question, Plaintiff States have met the Article III standard as to those programs. In analyzing standing, the court looks at the facts "as they exist when the complaint is filed." *Lujan v. Defs. of*

---

[3] Defendants refer to the challenged programs as "Federal-State Agreements" or "FSA," while Plaintiffs refer to them as "Food and Nutrition Assistance" programs or "FNA." No substantive distinction is intended by this usage, and the terms refer to the same challenged programs and conditions at issue in this litigation.

*Wildlife*, 504 U.S. 555, 569 n.4 (1992); *see also Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 (1st Cir. 2000). Plaintiff States filed their complaint on March 23, 2026, after USDA issued a Secretarial Memorandum directing "***all*** USDA agencies and staff offices" to implement the Challenged Conditions, and explaining its goal to establish a "simplified, core set of terms and conditions for ***the entire Department***." Doc. No. 1-3 at 3 (emphasis added). This broad directive created the "substantial risk" of future application of the Challenged Conditions to *all* the funds USDA administers, including FNA programs, sufficient to satisfy Article III's injury in fact requirement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

None of Defendants' attempts to diminish the nature of the threat Plaintiff States faced on March 23, 2026, succeed. First, they state that the FNA programs have "historically operated" through a unique set of terms and conditions, so Plaintiff States should have simply known that USDA's broad statements did not apply to the FNA programs. But the Rollins Memo made it clear that USDA was taking "decisive action" to overcome what it saw as "years of neglecting prudent financial management" of USDA programming. Doc. No. 1-3 at 2. This was an announcement to *break* with historical practice, supporting Plaintiff States' conclusion that the way FNA programs "historically operated" would change.

Second, Defendants cite the affidavit they filed on the docket on June 5, 2026, as evidence that Plaintiff States should have known that USDA was not "planning to apply" the terms and conditions to FNA programs. But the June affidavit was the *first time* any USDA official had made such a statement, and Plaintiff States could not have possibly known about such commitment when the case was filed on March 23, 2026. Moreover, Defendants cannot rely on this affidavit for purposes of a Rule 12(b)(6) motion to dismiss, as such motions test the sufficiency of the factual

allegations in the complaint and thus cannot rely on extrinsic evidence. *See Valentin*, 254 F.3d at 363.[4]

Third, Defendants note that the Rollins Memo allowed for a "deviation process" whereby certain programs would be carved out from the application of the Challenged Conditions. But simply including the deviation process in the memorandum, without applying it, did nothing to alleviate the risk of the Challenged Conditions application across USDA programming. And USDA did not request a deviation for the FNA programs until June 5, 2026, a full **74 days** after this case was filed. Plaintiff States had absolutely no way to know such a deviation was forthcoming when this case was filed, particularly when attempts to clarify the issue with agency staff were unsuccessful. Defendants' argument boils down to the assertion that Plaintiff States *should have known* that the broad language of the Secretarial Memorandum did not apply to FNA programs, because once a lawsuit was filed, a preliminary injunction motion was briefed, and the motion was argued, the agency would address the issue for the first time. Article III does not require such clairvoyance, and Defendants' Rule 12(b)(1) motion must be denied.

## II. <u>Plaintiffs have plausibly alleged that the Challenged Conditions violate the Spending Clause (Count I).</u>

The Defendants next ask the Court to dismiss Plaintiffs' Spending Clause claims, arguing they fail as a matter of law. But as this Court has already concluded, the conditions violate the

---

[4] Defendants have not argued that the June 5, 2026 affidavit mooted Plaintiffs claims as to the FNA program. Even if they had, such an argument would fail as "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) ("[T]he voluntary-cessation doctrine exists to stop a scheming defendant from trying to immunize itself from suit indefinitely by unilaterally changing its behavior long enough to secure a dismissal and then backsliding when the judge is out of the picture[.]") (cleaned up). To moot the Plaintiffs' claims as to the application of the conditions as to the FNA programs, Defendants have the "formidable burden" of showing that "no reasonable expectation remains that it will return to its old ways." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (cleaned up). Defendants have made no such showing, instead stating only that they are not "planning to apply the GT&Cs" to FNA programs, Doc No. 61-3, ¶ 6, leaving open the possibility that such plans could change in the future.

Spending Clause many times over.

The Constitution's Spending Clause sets limits on the imposition of conditions on federal funds. "An agency which Congress has tasked with implementing a statute that imposes spending conditions is also subject to the Clause's restrictions." *New York v. U.S. Dep't of Health and Hum. Servs.*, 414 F. Supp. 3d 475, 566 n.70 (S.D.N.Y. 2019). Under the Spending Clause, conditions placed on federal funding must be struck where, as here, such conditions are vague and ambiguous. Even assuming the Challenged Conditions were sufficiently clear—which they are not—they nonetheless violate the Spending Clause in two other ways: they are unduly coercive and are insufficiently related to the funding programs.

### a. The allegations plausibly suggest that the Challenged Conditions are unconstitutionally ambiguous.

Under the Spending Clause, when the federal government seeks to "impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Whether a condition is sufficiently unambiguous to pass muster under the Spending Clause depends on whether the text of the condition clearly apprises a state of its obligations under the condition. *See City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) (a court must view the condition "from the perspective of a state official" deciding whether to accept the condition and "ask whether such a state official would clearly understand" the obligation). Here, the Challenged Conditions' requirement that Plaintiff States certify compliance with "all applicable Federal . . . policies for the duration of the Federal award" is impermissibly vague because Defendants have failed to define or identify the universe of current (or potential future) anti-discrimination "policies" captured within the condition. *See* Doc No. 1-1 at 38.

In granting Plaintiffs' motion for a preliminary injunction, this Court noted that "[i]t belies credulity to state that the Department's use of the term 'policies' in the Policy Condition speaks

10

'so clearly' as to provide Plaintiff States with an informed choice." Doc No. 72 at 33-34. The Court further agreed with the Plaintiff States that not only is the Policy Condition vague as to the "policies" that apply, "but even the enumerated policies are vague, at best, and state on their own terms that they apply only to the federal government." *Id.* Nothing in Defendants' Motion to Dismiss briefing suggests the Court should now reach a contrary conclusion—Plaintiffs have adequately alleged that "policies" is unconstitutionally vague.

And Defendants fail entirely to respond to the Court's observation that the language of the cited policies is vague as to what conduct violates the policies. *See* Doc No. 72 at 34; Doc No. 76 at 11-12. Defendants argue that the two Executive Orders cited in the Policy Condition apply exclusively to the federal government and summarily assert that "a directive not to promote gender ideology" is not impermissibly vague. *See* Doc No. 76 at 11-12.[5] And Defendants' assertion that Plaintiffs would not be expected to comply with federal anti-discrimination policies not yet in existence—belied in the first instance by Defendants' reference to 2 C.F.R. § 200.340(a)(4) in their opposition to the motion for preliminary injunction (*see* Doc No. 43 at 9)—only serves to demonstrate Defendants' continued unwillingness to engage substantively with Plaintiffs' vagueness argument, instead insisting that Plaintiffs should simply trust that the Challenged Conditions will not be weaponized against them in this manner. *See* Doc No. 76 at 12.

In sum, Defendants' arguments regarding the unconstitutional vagueness of the Conditions are a rearticulation of the arguments this Court already rejected. For the reasons articulated in this Court's order granting Plaintiffs' Motion for Preliminary Injunction, Plaintiff States have plausibly

---

[5] Defendants' reliance on *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) is unavailing where a majority of district courts, including this one, have held otherwise. *See, e.g., R.I. Coal. Against Dom. Violence v. Kennedy*, 812 F. Supp. 3d 180, 197 (D.R.I. 2025); *City of Fresno v. Turner*, 2025 WL 2721390, at *18 (N.D. Cal. Sept. 23, 2025).

alleged that the Challenged Conditions are impermissibly vague under the Spending Clause. Doc No. 72 at 33-34. Defendants' Motion to Dismiss thus fails with respect to Count I.

### b. The allegations plausibly suggest that the Challenged Conditions are wholly unrelated to USDA programs.

The Spending Clause requires that any condition imposed on the receipt of federal funding must be "reasonably related" to the federal interest in the particular program at issue. *See Massachusetts v. United States*, 435 U.S. 444, 461 (1978) (plurality opinion). Here again, Defendants' motion to dismiss merely restates the already-rejected arguments raised at the preliminary injunction stage: that the Challenged Conditions impose conditions governing the *use* of federal funds such that those conditions are necessarily related to the government's interest in achieving each program's stated goals and priorities. *See* Doc No. 76 at 14; *see also* Doc No. 49 at 10-11. As the Court correctly found in granting the preliminary injunction, however, "if that argument were true, any prohibition, no matter what the prohibition is, would be related." Doc No. 72 at 35.

Defendants draw an analogy between the Challenged Conditions and a workplace restriction on using a work-issued laptop to book personal travel. But this analogy misses the mark—the Challenged Conditions interfere with the statutory purpose of this funding by restricting activities that further said purpose. The relatedness problem is compounded by the Conditions' vagueness. Plaintiff States continue to lack clarity as to whether the government intends the Challenged Conditions to restrict activities such as hiring and retaining transgender program staff, instituting DEI practices in state agencies to comply with applicable state anti-discrimination laws, or administering general public welfare programs that indirectly benefit immigrants. All of those activities would further the purposes of the many programs at issue, yet to the extent the government seeks to curb such activities through the Challenged Conditions, there is no intelligible

12

connection between those activities and, for example, a program purpose of "promot[ing] a sound and prosperous agricultural and rural life as indispensable to the maintenance of maximum employment and national prosperity and security." 7 U.S.C. § 361b. Defendants' arguments as to relatedness under the Spending Clause therefore fail, and the Motion to Dismiss must be denied as to Count I.

### c. The allegations plausibly suggest that the Defendants have leveraged billions of dollars in order to force Plaintiffs to adopt Defendants' policies.

Plaintiff States have also plausibly alleged that the Challenged Conditions are unduly coercive in violation of the Spending Clause. The determination whether a condition on federal funding "gives way to coercion" requires a court to examine *all* relevant facts and circumstances, including both "the programs at issue" and "the nature of the threat" posed by the condition. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580, 585 (2012) ("*NFIB*") (plurality opinion). This Court has already concluded that, "the sheer number of programs at issue and the nature of the threat posed by a loss of funding[] indicate coercion." Doc No. 72 at 36.

Defendants' argument that the Challenged Conditions are not unduly coercive is exclusively focused on their self-serving assertion that they do not intend to apply the Challenged Conditions to FNA programs. *See* Doc No. 76 at 13. In the first instance, Defendants' attestations are *post hoc* litigation positions made only in court filings beyond the scope of the pleadings considered on a Rule 12(b)(6) motion to dismiss, which turns on what "factual content" the "plaintiff pleads," not the statements made after filing by Defendants. *Iqbal*, 556 U.S. at 678. And the pleadings plainly state a claim for unconstitutional coercion.

Furthermore, even assessing the coercion claims apart from the FNA programs, Plaintiffs have sufficiently pled that the Challenged Conditions are unconstitutionally coercive. *See* Doc No. 81 at 5, ¶ 10 ("Plaintiff States have been given an unlawful choice: either (1) accept the Challenged

Conditions . . . or (2) risk the loss of billions of dollars in federal financial assistance that supports essential food, *agriculture, forestry*, and nutrition programs (emphasis added)); ¶¶ 107-118 (describing U.S. Forestry Services programs); ¶¶ 119-127 (describing USDA programs to support local agricultural products); ¶¶ 128-137 (describing USDA grant programs supporting university research).

Rather than seriously contend with the coercive nature of application of the Challenged Conditions to the non-FNA programs, Defendants simply state the sum total of federal funding at issue under the non-FNA programs "fails to approach the type of economic impact that would amount to *coercion*." Doc No. 76 at 13 (emphasis in original). This misstates the law. Courts assess the scale of the loss of federal funding for the program, and the effect the loss would have on the program budget and the state's overall budget. *See Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 178 (D.C. Cir. 2015). Plaintiff States allege that numerous USDA-funded programs, including non-FNA programs, are entirely or almost entirely federally funded, and Plaintiff States are unable to supplement lost federal funds across all USDA programs with state funds. Doc No. 81 at 5. State by state, the loss of federal funding with respect to individual programs is sufficiently severe to indicate coercion, and the cumulative effect on each State of losing *all* USDA funding plainly rises to the level of coercion. *See Miss. Comm'n*, 790 F.3d at 178; *Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 96 (D.R.I. 2025) (holding that threats to withhold federal funds, "particularly where state budgets are already committed . . . amounts [to] economic dragooning"); *NFIB*, 567 U.S. at 580. Defendants' arguments for dismissal of Count I with respect to coercion under the Spending Clause also fail.

**d.  Plaintiffs may proceed under both the APA and the Spending Clause.**

Defendants also assert that Plaintiff States' pursuit of nonstatutory claims—such as the Spending Clause claims—is "unavailable" where the APA provides an opportunity for judicial review. Doc No. 76 at 9–10 n.1. But Plaintiff States may plead and pursue claims under the Spending Clause in tandem with claims raised under the APA, as courts within this Circuit have routinely concluded. *See, e.g.*, *Washington v. Fed. Emergency Mgmt. Agency*, 818 F. Supp. 3d 195, 204 n.7 (D. Mass. 2025) (rejecting defendants' argument that constitutional claims were "simply APA claims in a constitutional disguise" where complaint raised serious "constitutional considerations"); *Illinois*, 801 F. Supp. 3d at 92 (granting summary judgment to plaintiffs on APA and Spending Clause claims). "The APA does not explicitly preclude bringing [constitutional] claims." *Cowels v. FBI*, 327 F. Supp. 3d 242, 250 (D. Mass. 2018). Indeed, constitutional claims are only precluded by statute where the "intent [of Congress] to do so [is] clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). This heightened showing is required "to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id*. (cleaned up).

Defendants' reliance on *Nuclear Regul. Comm'n v. Texas,* is misplaced, as in that case the plaintiffs brought *ultra vires* claims as an end-run around previously foreclosed statutory arguments. *See* 605 U.S. 665, 681–82 (2025). Plaintiff States' Spending Clause claim here raises independent constitutional concerns, including that Defendants have attempted to exercise powers not delegated to them by Congress and take actions specifically prohibited under the program's authorizing statutes to which they are bound. *See* Doc No. 81 at 75-76. Accordingly, Plaintiff States may proceed under both their constitutional claim (Count I) and their APA claims (Counts II-VI).

**III.** **Defendants have no basis to dismiss the APA claims.**

Defendants also move to dismiss Plaintiffs' APA claims, but their arguments for dismissal fail because analysis of an APA claim's factual sufficiency occurs *after* production of a certified administrative record. *Atieh*, 727 F.3d at 76. That has not occurred here, and this Court should not evaluate the sufficiency of the pleadings to resolve this matter. Regardless, Plaintiffs have sufficiently alleged facts which plausibly suggest they are entitled to relief under the APA, as the imposition of the Challenged Conditions by Defendants is arbitrary and capricious, contrary to law and in excess of statutory authority, procedurally defective, and contrary to constitutional right.

**a. Defendants' attempt to dismiss Plaintiffs' APA claims must be rejected because they have failed to produce the administrative record.**

The "plausibility standard" of Fed. R. Civ. P. 12(b)(6) "does not apply to a complaint for judicial review of final agency action." *Atieh*, 727 F.3d at 76. Rather, as the Supreme Court and courts of this Circuit have repeatedly held, "the focal point of APA review is the existing administrative record." *Id.*; *see also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) ("[T]he focal point for judicial review should be the administrative record already in existence.") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

The First Circuit's decision in *Atieh* controls here. There, plaintiff challenged the decision of the U.S. Citizenship and Immigration Services to deny his visa petition. Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the District Court allowed. On appellate review, the First Circuit held that, upon review of claims brought under the APA, "[t]he relevant inquiry is—and must remain—not whether the facts set forth in a complaint state a plausible claim, but, rather, whether the administrative record sufficiently supports the agency's decision." *Atieh*, 727 F.3d at 76. Accordingly, the Court vacated the judgment of the District Court

and remanded for further proceedings. Here, Defendants' arguments for dismissal of Plaintiffs' APA claims rest primarily on factual disputes with Plaintiffs' allegations, for example, arguing that the explanation given for the agency action was adequate or that the amount of funding at stake is not coercive. Doc. No. 76 at 12–13, 15. Not only do such arguments not meet the plausibility standard, they also present the exact posture summarily rejected by the First Circuit. The Court should likewise deny Defendants' motion.

### b. Plaintiffs have alleged facts which plausibly suggest the Rollins Memo and the subsequent application of the Challenged Conditions to USDA funding programs were arbitrary and capricious, in violation of the APA (Count II).

Even if the Court addresses the APA claims based on the sufficiency of the pleadings, Plaintiffs' Complaint clearly meets the minimal standard imposed by Rule 12(b)(6).

First, Defendants argue that Plaintiffs have not pled that there was an "inadequate explanation for imposing" the Challenged Conditions, Doc No. 81 at 69, because the Rollins Memo includes broad assertions about the need for "[s]trengthen[ing] USDA control and oversight of obligated funds." Doc No. 76 at 15. In other words, Defendants suggest that the Rollins Memo on its face is sufficiently reasoned to defeat Plaintiffs' arbitrary and capricious claim.

But the Rollins Memo demonstrates the exact opposite, showing the agency here failed to "examine the relevant data and articulate a satisfactory explanation for its action." *FCC v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 513 (2009) (citation omitted). The Rollins Memo contains no indication that the agency considered any relevant evidence in adopting the Challenged Conditions. Instead, it delivers a series of conclusory statements "as circular as an Ouroboros." Doc No. 72 at 44. It is reasonable to infer, as the Court must under Rule 12(b)(6), that these circular statements are all the Defendants have to offer.

Nor does the fact that the memo sets out a goal of increasing oversight and control of USDA funding defeat the APA claims. This bare assertion is neither "obviously" related to nor adequate to justify the imposition of the Challenged Conditions. As district courts across the country— including this one—have held, "platitudes cannot substitute for an explanation of why it is necessary to attach sweeping . . . conditions to all the grants at issue here, regardless of their statutory purpose or programmatic objectives." *Illinois*, 801 F. Supp. 3d at 93; Doc No. 72 at 44.

Second, Defendants assert that "Plaintiffs cannot have [the Challenged Conditions] set aside as arbitrary and capricious based on their view that the agency failed to conduct enough legal research into the issue beforehand." Doc No. 76 at 16. This is incorrect. "[A]n agency rule would be arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem" before it. *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). It is thus arbitrary and capricious for the agency to neither "look to" nor "discuss" statutory "requirements." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020). The legal and regulatory landscape in which an agency operates is plainly an "important aspect" that an agency must consider before making changes that affect funding recipients.[6] *See Illinois*, 801 F. Supp. 3d at 93–94. Plaintiff States have sufficiently alleged that USDA has failed to even consider this important aspect of the problem.

Third, Defendants assert that Plaintiffs have failed to allege sufficient reliance interests on the existing USDA funding landscape, also claiming this allegation "rests primarily" on FNA funding. Doc No. 76 at 16. Not so. As just one example among many, Plaintiff States have received

---

[6] For example, if USDA issued a rule requiring States to zone a certain number of acres as farmland, where states and municipalities have complex statutory and regulatory zoning frameworks, USDA would at the very least be required to consider the legal and administrative implications of such a rule—and USDA would further be required to explain why the rule is nevertheless justified in the face of those implications.

funding through the land-grant university system for over 100 years, since the passage of the Morrill Act in 1862. Doc No. 1 at 33; see 7 U.S.C. § 301 *et seq*. "This has enabled [Plaintiff States'] public universities to produce important research and data to address various critical issues such as cold hardiness, forest management activities, and mapping seasonal variation. . . . These programs directly impact national health, safety, and security." Doc No. 81 at 34-35. The APA demands that USDA consider the reliance on this funding by states, as well as the reliance interests of farmers, ranchers, foresters, and communities on these programs. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016). Plaintiffs have sufficiently alleged that Defendants have not.

Defendants also use this opportunity to attack the Court's reasoning in its order granting Plaintiffs' Motion for Preliminary Injunction, namely, the finding that USDA failed to consider reasonable alternatives to the Challenged Conditions. Doc No. 76 at 17. In so doing, Defendants advance a novel and narrow reading of *State Farm* and *DHS v. Regents of the University of California*, 591 U.S. 1 (2020): that the "failure to consider alternatives" standard only applies where there has been a termination of "an *entire* program based on a rationale that applies to only *part* of it." Doc No. 76 at 18 (emphasis in original). The Court should reject this reading.

It is true that an agency "cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man . . . regardless of how uncommon or unknown that alternative may have been." *State Farm*, 463 U.S. at 43 (quoting *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 551 (1978)). But this limiting principle applies only where the alternatives are "remote and speculative possibilities . . . available, if at all, only after protracted debate and litigation." *Vt. Yankee*, 435 U.S. at 551 (quoting *Nat. Res. Def. Council v. Morton*, 458 F.2d 827, 837–38 (D.C. Cir. 1972)). In other words, "the requirement as to

19

alternatives is subject to a construction of reasonableness." *Morton*, 458 F.2d at 837. Given the impact of the Challenged Conditions on the federal funding landscape, Defendants were required to consider at least *some* alternatives. Plaintiffs have sufficiently alleged that they have not.

Fourth, citing allegations in the Complaint, Defendants assert that Plaintiff States have failed to allege that USDA "'entirely failed to consider' the adverse impact on state agencies if Plaintiff States were to adhere to the Challenged Conditions," Doc No. 81 at 70 (citing *State Farm*, 463 U.S. at 43), relying on a conclusory *post-hoc* statement admitting that the "point of the Challenged Conditions" is to induce states to adopt the agency's policies. Doc No. 76 at 19. In the first instance, Defendants raise a factual dispute, not a legal one. And once again, Defendants are ahead of their skis. If Defendants did in fact consider evidence of adverse impacts on state agencies caused by compliance with the Challenged Conditions, this will presumably be reflected in the administrative record, which Defendants have yet to provide. Moreover, the Complaint and its accompanying exhibits do not permit an inference that USDA has considered these important aspects of the problem—to the contrary, the Complaint paints a clear picture of an agency that has acted first and justified second.

Defendants point to the face of the Challenged Conditions as evidence that USDA did consider relevant and important impacts of the Challenged Conditions on state agency funding recipients, asserting that "[i]t is . . . difficult to see how the Gender Condition could reasonably be interpreted as requiring the firing of a transgender researcher," Doc No. 76 at 20, despite this Court's finding to the contrary. Doc No. 72 at 44. This *post hoc* concession does not resolve the question. Can this researcher use non-binary pronouns? Can a gender-neutral bathroom be made available? Neither USDA in its briefing, nor the Gender Condition itself makes clear where these

20

lines are drawn. Defendants' *post hoc* justifications and litigation positions cannot cure that defect. *Kisor v. Wilkie*, 588 U.S. 558, 579 (2019).

In sum, Defendants' arguments exemplify why a motion to dismiss is an inappropriate vehicle for substantive review of APA claims where the administrative record has not been produced. Without the administrative record, Defendants impermissibly ask the court to trust that a "reasoned justification" based on "substantial evidence" exists, *Int'l Org. of Masters, Mates, & Pilots, ILA, AFL-CIO v. NLRB*, 61 F.4th 169, 178 (D.C. Cir. 2023), "because [they] said so." Doc No. 72 at 44.

### c. Plaintiffs have alleged facts which plausibly suggest the Rollins Memo and Challenged Conditions are contrary to law and in excess of the Defendants' statutory authority (Counts III and VI).

Plaintiff States have also sufficiently alleged contrary to law and excess of statutory authority claims. Although the "contrary to law" claim under 5 U.S.C. § 706(2)(A) and "in excess of statutory authority" claim under 5 U.S.C. § 706(2)(C) fall under separate APA provisions, courts have found they contain a "linguistic distinction without a practical difference." *Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104, 127 (D. Mass. 2021) (citing *City of Arlington*, 569 U.S. at 299). On a motion to dismiss, Plaintiffs need not identify each discrete statute of which the Challenged Conditions and the Rollins Memo run afoul in order to state a claim under 5 U.S.C. § 706(2)(A); indeed, the *absence* of any statutory authority is itself sufficient to establish a claim under 5 U.S.C. § 706(2)(C).

Plaintiffs plausibly allege that USDA exceeded its statutory authority when issuing the Policy and Immigration Conditions because no statute authorizes USDA to impose agency-wide restrictions on federal funding in this manner. An agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374

(1986). This is especially true in the federal funding context, where Congress has the power to "set the terms on which it disburses federal funds." *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 216 (2022). Accordingly, "[a]ny action that an agency takes outside the bounds of its statutory authority is ultra vires…and violates the Administrative Procedure Act." *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020). In *California v. Mullin*, a court applied these principles and denied a motion to dismiss a § 706(2)(C) claim where plaintiffs alleged no statute authorized the federal agencies' implementation of the administration's $100,000 payment requirement for H-1B visa petitions. No. CV 25-13829-LTS, 2026 WL 1649160, at *16 (D. Mass. June 8, 2026).

Defendants argue Plaintiff States' § 706(2)(C) claim fails because its specific allegations pertain to the Child Nutrition Programs and SNAP, to which the Challenged Conditions purportedly do not apply. Doc No. 76 at 21. However, as discussed *supra* at Section III.b, USDA's post-argument declaration is irrelevant at the motion to dismiss stage. Moreover, the Rollins Memo applies the Challenged Conditions to "all future awards." Doc No. 1-3 at 2. As this Court has already concluded, "[g]iven the lack of concrete assurances, coupled with the sweeping language used by the Secretary in the December 2025 memorandum, Plaintiff States face a sufficiently imminent risk of these Challenged Conditions reaching the FNS programs." Doc No. 72 at 31. Nor does the Secretary's discretionary deviation process defeat imminence. A self-created, revocable exception to an otherwise sweeping directive does not eliminate a credible threat of future enforcement—particularly where, as here, USDA sought and obtained that exception only after Plaintiffs filed suit, Doc No. 63-1 at 3, and remains free to decline or rescind such deviations for any FNA program at any time. *See Susan B. Anthony List*, 573 U.S. at 164.

Defendants identify two statutes that supposedly grant the Secretary the authority to impose the Policy and Immigration Conditions. Doc No. 76 at 21. However, these statutes only allow the imposition of limited conditions, none of which are like the Challenged Conditions. *See, e.g.,* 16 U.S.C. § 2106(b); 7 U.S.C. § 1621. Even when Congress affords USDA discretion over competitive grants, that discretion must be exercised within Congress' defined parameters. *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985). The Policy and Immigration Conditions do not fit within the parameters of the statutes cited by Defendant.

Additionally, there are non-FNA, USDA-administered programs that are governed by prescriptive statutory formulas. For example, 7 U.S.C. § 361c prescribes how Hatch Act of 1887 funds, which provide funds to state land-grant institutions, will be distributed to the States, and 7 U.S.C. § 361g grants the Secretary the limited authority to "ascertain" whether a State is "entitled to receive its share of the annual appropriations for agricultural experiment stations" based on the submission of a plan of work that must adhere to statutory requirements. Because Defendants do not possess the statutory authority to impose the Policy and Immigration Conditions across all USDA grants, nor do they possess authority to impose such conditions on specific USDA funding, Plaintiffs have plausibly alleged that USDA exceeded its statutory authority.

Defendants also seek dismissal of Plaintiffs' § 706(2)(A) contrary to law claim, arguing that the 2026 Conditions' order-of-precedence provision defeats this claim and that USDA has disclaimed the application of the Challenged Conditions to the FNA programs. Doc No. 76 at 23-24. Neither argument warrants dismissal.

First, the order-of-precedence provision merely provides that federal statutes and regulations will be given precedence in the event they conflict with the 2026 Conditions. Doc No. 1-1 at 5. However, the existence of a mechanism that could possibly strike conditions that are

contrary to law does not render such conditions lawful. USDA appears to argue the Court need not determine whether the Immigration, Gender, and Sports Conditions are contrary to law because USDA—or possibly grantees—can make that determination itself. But the APA requires *courts* "to set aside federal agency action that is not in accordance with law." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (citation omitted). No provision in the 2026 Conditions can replace this Court's review.

Second, Defendants contend the Immigration, Gender, and Sports Conditions cannot be contrary to law because USDA has disclaimed application of the Challenged Conditions to the FNA programs governed by the statutes identified by Plaintiff States. Doc No. 76 at 23-24. For reasons discussed *supra*, USDA's post-argument declaration does not defeat Plaintiff States' claims at the motion to dismiss stage. Further, Plaintiff States challenge the Challenged Conditions and Rollins Memo as issued, and the Rollins Memo applies these conditions to "all future awards." Doc No. 1-3 at 2. USDA's later representation regarding the Challenged Conditions' application does not establish that these conditions are lawful or eliminate Plaintiffs States' claim that they are contrary to law. The APA requires courts to set aside agency action that is "not in accordance with law," 5 U.S.C. § 706(2)(A), and the legality must be assessed based on the action the agency took, not a later attempt to narrow the scope. *See NextWave*, 537 U.S. at 301–02; *Regents*, 591 U.S. at 20–21; *Kisor*, 588 U.S. at 579. Plaintiffs have plausibly stated a claim under 5 U.S.C. § 706(2)(A).

> **d. Plaintiffs have alleged facts which plausibly suggest the Defendants issued an interpretive rule in violation of the APA's notice and comment requirements (Count IV).**

Defendants argue that Count IV should be dismissed based on the assertion that the "agency does not believe or contend that it promulgated the Gender and Sports conditions as interpretations of Title IX." Doc No. 76 at 22. But once again, these are post-filing representations made by

Defendants, not pleading deficiencies to be addressed on a Rule 12(b)(6) motion. The Court cannot grant such a motion based on the Defendants' "beliefs" or post-filing "contentions.' Instead, Plaintiffs plainly meet the pleading standard, alleging that if the agency failed to submit any reinterpretation of Title IX though notice and comment, such a failure plainly violates the APA. *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 609–13 (6th Cir. 2024).

### e. Plaintiffs have plausibly alleged that the Defendants violated the APA by exceeding their constitutional authority (Count V).

Under the APA, a "court shall . . . hold unlawful and set aside agency actions, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(B). As discussed *supra*, Plaintiff States have plausibly alleged that Defendants' actions violate the Spending Clause and exceed Defendants' constitutional authority. The Challenged Conditions are unconstitutionally vague and ambiguous, are entirely unrelated to the purposes of the funding programs at issue and exert unlawful coercion over the Plaintiff States to either adopt and implement federal policies or cede critical funding necessary for the operation of numerous state-administered funding programs. *See supra* at Section II. Accordingly, Defendants' Motion to Dismiss must be denied as to Count V.

### CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion to Dismiss.

Dated: August 14, 2026

Respectfully submitted,

ANDREA JOY CAMPBELL
  *Attorney General of Massachusetts*

By: */s/ Jak Kundl*
Nita K. Klunder (BBO No. 689304)
  *State Trial Counsel*
Hannah C. Vail (BBO No. 698577)
Jak Kundl (BBO No. 713951)
Savannah Arguello (BBO No. 710710)
  *Assistant Attorneys General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2394
Nita.Klunder@mass.gov
Hannah.Vail@mass.gov
Jak.Kundl@mass.gov
Sav.Arguello@mass.gov

*Counsel for the Commonwealth of Massachusetts*

ROB BONTA
  *Attorney General of California*

*/s/ Brian Bilford*
BRIAN BILFORD*
Deputy Attorney General
MICHAEL L. NEWMAN*
Senior Assistant Attorney General
JOEL MARRERO
Supervising Deputy Attorney General
ALYSSA ZHANG*
LUKE FREEDMAN*
DANIEL SHEEHAN*
Deputy Attorneys General
Brian.Bilford@doj.ca.gov
Michael.Newman@doj.ca.gov
Joel.Marrero@doj.ca.gov
Alyssa.Zhang@doj.ca.gov
Luke.Freedman@doj.ca.gov
Daniel.Sheehan@doj.ca.gov

*Counsel for Plaintiff State of California*

KWAME RAOUL
  *Attorney General of Illinois*

By: */s/ Vikas Didwania*
Vikas Didwania*
Aleeza Strubel
  *Complex Litigation Counsels*
Michael M. Tresnowski
  *Assistant Attorney General*
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(312) 814-3000
Vikas.Didwania@ilag.gov
Aleeza.Strubel@ilag.gov
Michael.Tresnowski@ilag.gov

*Counsel for the State of Illinois*

JOSHUA L. KAUL
  *Attorney General of Wisconsin*

By: */s/ Lynn K. Lodahl*
Lynn K. Lodahl*
  *Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, WI 53707
(608) 264-6219
lynn.lodahl@wisdoj.gov

*Counsel for the State of Wisconsin*

26

PHILIP J. WEISER
  *Attorney General of Colorado*

By: */s/ Sam Wolter*
Sam Wolter*
  *Assistant Attorney General*
Kristopher Brambila
  *Senior Assistant Attorney General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
Samuel.wolter@coag.gov
Kristopher.brambila@coag.gov

*Counsel for the State of Colorado*


WILLIAM TONG
  *Attorney General of Connecticut*

By: */s/ Andrew M. Ammirati*
Andrew M. Ammirati*
  *Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5090
Andrew.Ammirati@ct.gov


*Counsel for the State of Connecticut*

KATHLEEN JENNINGS
  *Attorney General of the State of Delaware*

By: */s/ Ian R. Liston*
Ian R. Liston
  *Director of Impact Litigation*
Rose E. Gibson
Vanessa L. Kassab

JENNIFER DAVENPORT
  *Attorney General for the State of New Jersey*

By: */s/ Jessica L. Palmer*
Jessica L. Palmer*
  *Assistant Attorney General*
Dianna Shinn*
Jonathan Allen*
  *Deputy Attorneys General*
New Jersey Office of the Attorney General
Division of Law – Environmental & Clean Energy Practice Group
25 Market Street
Trenton, New Jersey 08625-0093
(609) 696-4607
jessica.palmer@law.njoag.gov
dianna.shinn@law.njoag.gov
jonathan.allen@law.njoag.gov


*Counsel for the State of New Jersey*


RAÚL TORREZ
  *Attorney General of New Mexico*

By: */s/ Amy Senier*
Amy Senier (BBO No. 672912)
  *Senior Counsel*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-490-4060
asenier@nmdoj.gov


*Counsel for the State of New Mexico*

LETITIA JAMES
  *Attorney General for the State of New York*

By: */s/ Natasha M. Korgaonkar*
Rabia Muqaddam*
  *Chief Counsel for Federal Initiatives*
Natasha M. Korgaonkar (BBO 704129)
Matthew Faiella*

27

*Deputy Attorneys General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Counsel for the State of Delaware*


BRIAN L. SCHWALB
  *Attorney General for the District of Columbia*


By: */s/ Samantha Hall*
Samantha Hall
  *Assistant Attorney General*
Office of the Attorney General
for the District of Columbia
400 Sixth Street NW
Washington, D.C. 20001
(202) 788-2081
samantha.hall@dc.gov

*Counsel for the District of Columbia*


ANNE E. LOPEZ
  *Attorney General for the State of Hawaiʻi*


By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day
  *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes
  *Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*


ANTHONY G. BROWN
  *Attorney General for the State of Maryland*


By: */s/ James C. Luh\**
James C. Luh

*Special Counsel*
28 Liberty St.
New York, NY 10005
(212) 416-6557
rabia.muqaddam@ag.ny.gov
Natasha.korgaonkar@ag.ny.gov
matthew.faiella@ag.ny.gov

*Counsel for the State of New York*


DAN RAYFIELD
  *Attorney General for the State of Oregon*


By: */s/ Leanne Hartmann*
Leanne Hartmann, MA BBO #667852
  *Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov

*Counsel for the State of Oregon*


PETER F. NERONHA
  *Attorney General of Rhode Island*


By: */s/ Paul T.J. Meosky*
Paul T.J. Meosky\*
  *Special Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2064
pmeosky@riag.ri.gov

*Counsel for the State of Rhode Island*


CHARITY R. CLARK
  *Attorney General of Vermont*


By: */s/ Jonathan T. Rose*
Jonathan T. Rose

28

*Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.maryland.gov

*Counsel for the State of Maryland*

AARON M. FREY
  *Maine Attorney General*

By: */s/ Katherine W. Thompson*
Katherine W. Thompson*
  *Special Counsel*
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov

*Counsel for the State of Maine*

DANA NESSEL
  *Attorney General of Michigan*

By: */s/ Neil Giovanatti*
Neil Giovanatti*
  *Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

KEITH ELLISON
  *Attorney General for the State of Minnesota*

By: */s/ Brian S. Carter*
Brian S. Carter
*Special Counsel*

*Solicitor General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

JAY JONES
  *Attorney General of Virginia*

By: */s/ Tillman J. Breckenridge*
Tillman J. Breckenridge*
  *Solicitor General*
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-2071
Fax: (804) 786-1991
solicitorgeneral@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

NICHOLAS W. BROWN
  *Attorney General of Washington*

By: */s/ Zane Muller*
Zane Muller
Erica Franklin
  *Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
Zane.Muller@atg.wa.gov
Erica.Franklin@atg.wa.gov

*Counsel for the State of Washington*

AARON D. FORD
  *Attorney General for the State of Nevada*

By: */s/ K. Brunetti Ireland*
K. Brunetti Ireland*
*Chief of Special Litigation*

29

445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-7403
Brian.carter@ag.state.mn.us

*Counsel for the State of Minnesota*

JOSH SHAPIRO
  *Governor for the Commonwealth of Pennsylvania*

By: */s/ Jacob B. Boyer*
Jennifer C. Selber*
Jacob B. Boyer*
  *Deputy General Counsel*
Governor's Office of General Counsel
30 North 3rd Street
Suite 200
Harrisburg, PA 17101
jacobboyer@pa.gov

*Attorneys for Governor Josh Shapiro*

Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for the State of Nevada*

*pro hac vice applications admitted, pending, or forthcoming*

30

## CERTIFICATE OF SERVICE

I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF)

*/s/ Jak Kundl*
Jak Kundl
