**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | Civil Action No. 26-11396-MJJ |

**MEMORANDUM OF DECISION**

November 16, 2026

JOUN, D.J.

Plaintiff States receive billions of dollars in annual funding from Defendant U.S. Department of Agriculture ("the Department"). To receive such funds, states must comply with the Department's General Terms and Conditions. In December 2025, however, the Secretary of Agriculture updated these terms to include new conditions (the "Challenged Conditions") that states must now comply with in order to receive such funding, including requirements that states adhere to the President's policy preferences on immigration, gender, transgender athletic participation, and diversity, equity, and inclusion. Plaintiff States sued the Department alleging that the Challenged Conditions violate the Constitution and the Administrative Procedure Act ("APA").

On June 5, 2026, I granted Plaintiff States' motion for preliminary injunction, finding that Plaintiff States demonstrated a strong likelihood of success on the merits with the balance of

equities and public interest in their favor. [Doc. Nos. 64, 72]. On July 10, 2026, Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. Nos. 75, 76]. The First Amended Complaint ("FAC"), [Doc. No. 81], is the operative pleading; the parties address it in their briefing. [Doc. No. 82 at 2 n.1]. For the reasons below, the motion is DENIED.

## I. FACTUAL BACKGROUND

On December 31, 2025, the Secretary of Agriculture issued a memorandum directing Department components to adopt general terms and conditions for future awards and significant modifications to awards, "to the maximum extent consistent with law." [Doc. No. 1-3 at 3]; [Doc. No. 81 at ¶¶ 172–73]. The general terms address grants, cooperative agreements, and certain other funding arrangements. [Doc. Nos. 1-1, 1-2]. The provisions challenged here are: (1) § 12.2, requiring adherence to applicable federal antidiscrimination laws, regulations, and "policies," including specified executive orders ("Policy Condition"); (2) § 13.5, barring use of funding to "promote gender ideology" ("Gender Condition"); (3) § 13.8, restricting funding relating to certain educational athletic opportunities and participation in women's sports ("Sports Condition"); and (4) § 13.10, restricting funding directed toward programs concerning benefits or resources for persons unlawfully present and incentives for illegal immigration ("Immigration Condition"). [Doc. No. 1-1 at 38–39, 48]; [Doc. No. 81 at ¶¶ 164–71].

The States allege that Department funding supports nutrition assistance, agricultural research, forestry, firefighting, and other programs; the programs are not all administered in the same way. Some are funded through discretionary grants or cooperative agreements; several nutrition programs operate under specific federal statutes, regulations, and federal-state agreements. [Doc. No. 81 at ¶¶ 39–138]; [Doc. No. 76 at 1–3]. The States allege that they collectively receive more than $74 billion annually in Department funding, but the extent to which

that total is subject to the Challenged Conditions is disputed. [Doc. No. 81 at ¶ 10]; [Doc. No. 76 at 13–15].

The Department asserts that the Challenged Conditions are not and will not be applied to the nutrition programs administered through federal-state agreements. In support it relies on a June 5, 2026 declaration stating that the Department has not applied, is not applying, and does not plan to apply the general terms to those programs. [Doc. No. 63-1 at 2–3]. The States contend that the Secretary's earlier Department-wide directive, the timing of the exemption or deviation process, and the Department's communications about enforcement created a concrete threat before the declaration was issued. [Doc. No. 81 at ¶¶ 172–85]; [Doc. No. 82 at 7–9].

The Court previously entered a preliminary injunction and issued a memorandum addressing likelihood of success and other preliminary-relief factors. [Doc. Nos. 64, 72]. This decision addresses a different procedural question, under the operative amended pleading and the applicable motion-to-dismiss standards.

## II. LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff, the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (citation omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In evaluating a motion to dismiss under 12(b)(1), the Court must determine whether the facts in the complaint support subject-matter jurisdiction. *Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 94 (D. Mass. 2023). This pleading standard is the same as the 12(b)(6) standard. *See, e.g.*, *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). "As a result, an order granting a motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." *Id.* (citation omitted). At the pleading stage, a facial Rule 12(b)(1) challenge is assessed on the well-pleaded allegations. But a factual jurisdictional challenge can require consideration of evidence outside the complaint. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

## III. DISCUSSION

### A. Standing

Defendants argue that Plaintiffs lack standing as to the FNS[1] programs for two primary reasons, focusing on the injury prong. [Doc. No. 76 at 6–10]. First, according to Defendants, Plaintiffs have failed to establish an imminent injury because they have neither demonstrated a credible threat of enforcement nor shown a substantial risk that the Challenged Conditions will be applied to the FNS programs. [*Id.* at 7–9]. Second, Defendants argue that this Court's standing analysis in its preliminary injunction decision, *see* [Doc. No. 72], erred by "improperly flipp[ing] the burden of proof." [Doc. No. 76 at 7, 9]. Neither argument is persuasive.

At the pleading stage, the First Circuit applies the standard governing motions under Fed. R. Civ. P. 12(b)(6) to determine whether a plaintiff has adequately alleged Article III standing. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing, *e.g.*, *Van Wagner Bos.,*

[1] "FNS" refers to the Food and Nutrition Assistance Programs. Defendants refer to these programs as FSA while Plaintiffs refer to them as FNA. [Doc. No. 82 at 11, n.2]. Because I used "FNS" in my preliminary injunction decision, I use this term here, too, though I note that all acronyms are referring to the same programs.

*LLC v. Davey*, 770 F.3d 33, 40 (1st Cir. 2014)). Under this standard, a plaintiff bears the burden of alleging facts sufficient to plausibly establish standing. *Id.* at 731. "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Id.* (citations omitted). Standing contains three essential elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Where, as here, the alleged injury is prospective, standing may be established if the threatened harm is "certainly impending or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). A sufficiently imminent and substantial risk of future harm satisfies the requirement of a concrete injury. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 375 (1st Cir. 2023) (citations omitted).

Plaintiffs have plausibly alleged such a risk. The FAC alleges that every Plaintiff State annually receives funding from the Department through grants, cooperative agreements, and mutual interest agreements. [Doc. No. 81 at ¶ 39]. It further alleges that "some Plaintiff States have already received funding documents that incorporate the 2026 Conditions" and that, given the sweeping language of the Department's announcements, Plaintiffs anticipate that the Department will extend the Challenged Conditions to additional programs. [*Id.*]. These allegations, considered alongside the Department's subsequent actions, plausibly establish a substantial risk of future harm to all Plaintiff States. Because that risk is sufficient to establish injury in fact at this stage, I need not separately address Plaintiffs' argument that they have already suffered harm. *See Wiener v. MIB Group, Inc.,* 86 F.4th 76, 85 (1st Cir. 2023) (declining to reach an alternative theory of standing after finding that the plaintiff's out-of-pocket loss established Article III standing).

Contrary to Defendants' contention, the FAC alleges more than a speculative possibility that the Challenged Conditions will reach the FNS programs. Defendants rely on a June 5, 2026 affidavit, *see* [Doc. No. 63-1], to suggest otherwise, but that reliance overlooks the procedural posture of the present motion. In evaluating a pleading-stage challenge to subject-matter jurisdiction under Rule 12(b)(1), I accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See Valentin*, 254 F.3d at 363. Here, the FAC alleges that the Secretary expressly announced that the Challenged Conditions "will be applicable to all awards." [Doc. No. 81 at ¶ 172] (quoting Secretary Rollins memorandum). It further alleges that Secretary Rollins "directed the 2026 Conditions to apply across the board." [*Id.* at ¶ 173]. Likewise, in an informal email memorandum announcing the "Golden Age of Civil Rights," the Department made clear its intention to enforce its mandates "not only in all programs under its jurisdiction and within its workforce, but against all recipients of [Department] funding." [*Id.* at ¶ 184] (internal quotation marks omitted).

Importantly, the FAC also identifies an action specifically directed at the FNS programs. FNS issued a memorandum notifying agencies in Plaintiff States that the Department was rescinding its existing civil rights compliance guidance for nutrition programs and activities and would issue amended guidance once finalized. [*Id.* at ¶ 185]. According to the FAC, Plaintiffs have yet to receive that amended guidance, leaving them "even more vulnerable to undetermined and aggressive interpretations and applications of the vague Challenged Conditions." [*Id.*]. Thus, Plaintiffs' asserted risk rests not merely on the Department's broad statements of intent, but also on an affirmative step taken by FNS to withdraw existing compliance guidance. Taken together, these allegations plausibly establish a substantial risk that the Challenged Conditions will be applied to the FNS programs.

Defendants' reliance on *Trump v. New York*, 592 U.S. 125 (2020), does not alter this conclusion. Defendants contend that the Secretary's qualification of her broad directive renders any future application of the Challenged Conditions too uncertain to support standing. But *Trump* is distinguishable in several respects. First, the Supreme Court evaluated the full record, including declarations, rather than assessing the sufficiency of allegations at the pleading stage. *Id.* at 132–33. Second, the Court emphasized that "[e]veryone agree[d]" that the Government could not feasibly implement the challenged memorandum—which directed the exclusion of certain noncitizens from the census apportionment base—and that the plaintiffs had conceded that any chilling effect had dissipated once the census period ended. *Id.* at 131. Finally, the Court concluded that "[a]ny prediction how the Executive Branch might eventually implement [the President's] general statement of policy [was] 'no more than conjecture' at [that] time." *Id.* (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)).

The allegations here support a different conclusion. Unlike the uncertain implementation at issue in *Trump*, the Department has expressly announced its intention to apply the Challenged Conditions to "all programs" and "all recipients" of Department funding. [Doc. No. 81 at ¶ 184]. More significantly, FNS has already rescinded existing civil rights compliance guidance for nutrition programs while indicating that replacement guidance would follow. [*Id.* at ¶ 185]. The FAC alleges that no such guidance has been issued, leaving the scope and application of the Department's new requirements unresolved. Against the backdrop of the Department's sweeping directives, FNS's withdrawal of its existing guidance provides a concrete basis for anticipating that the Challenged Conditions will extend to these programs. Plaintiffs' asserted injury therefore rests on more than conjecture. At this stage, the FAC plausibly alleges a substantial risk that the

Challenged Conditions will reach the FNS programs, sufficient to satisfy the injury-in-fact requirement.

**B. Spending Clause Claim**

The federal spending power permits Congress to establish conditions on federal financial assistance, but the conditions must provide clear notice to recipients, bear the required relationship to the federal interest, and not exert unconstitutional coercion. *South Dakota v. Dole*, 483 U.S. 203, 207–11 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575–85 (2012) (opinion of Roberts, C.J.) ("*NFIB*"). The Court does not presume that a condition is unconstitutional simply because it addresses a subject on which the States and the federal government disagree.

1. Clarity. The States plausibly identify uncertainty in the Policy Condition's reference to all applicable federal antidiscrimination "policies" during the term of the award. [Doc. No. 81 at ¶¶ 164–67, 246]. Defendants correctly observe that the word "applicable" is limiting and that the text identifies certain executive orders; the Court must consider those references, not isolate the word "policies." But the FAC alleges that the executive orders do not clearly explain what obligations are imposed on state recipients, including whether the Department requires changes in otherwise lawful DEI initiatives, agency positions, or educational content. [Doc. No. 81 at ¶¶ 4–5, 164–71]. The other Conditions likewise use terms such as "promote gender ideology," "fair athletic opportunities," and "incentives for illegal immigration," whose application to particular Department-supported activities is alleged to be uncertain. [*Id.*]. Defendants may ultimately establish a narrower, legally adequate interpretation, and not every uncertainty invalidates a condition. At this stage, however, the asserted ambiguities concern the conduct necessary for

continued receipt of substantial grants, not merely hypothetical edge cases. They suffice to prevent dismissal of the clarity theory.

2. Relatedness. Defendants have a legitimate argument that preventing unlawful discrimination in federally supported activity can relate to the use of federal funds. No categorical rule makes antidiscrimination or immigration-related restrictions unrelated to agriculture or nutrition. The inquiry instead considers the reach of each condition and the federal interest in the programs to which it is attached. The FAC alleges that the Conditions, as announced and potentially implemented, regulate activities and state policy choices beyond the activities funded by particular Department grants. [Doc. No. 81 at ¶¶ 164–71, 245–49]. An agency cannot establish the requisite relationship merely by phrasing a restriction as a prohibition on using "funding." The varied statutes and program purposes also matter. The States therefore state a plausible relatedness theory, though whether it succeeds may differ among programs and conditions.

3. Coercion. The States allege more than $74 billion in annual Department funding and substantial reliance on programs serving vulnerable populations and supporting research and public safety. [Doc. No. 81 at ¶¶ 10, 39–138, 247–49]. The Court does not treat $74 billion as an established amount threatened by the Conditions. Defendants contend that most of this funding consists of nutrition assistance to which the general terms do not apply. [Doc. No. 76 at 13–15]. Even if the States have standing to litigate the threat of application to such programs, the funding actually at risk of termination remains a distinct merits question. The magnitude of federal funding alone does not prove coercion. *NFIB* requires attention to the programs, the nature of the threatened loss, and the recipient's practical freedom of choice. Nevertheless, taking the pleaded breadth of the directive, the alleged threatened consequences, and the States' established reliance on the

relevant funding streams together, the FAC adequately raises a coercion theory that cannot be rejected merely by accepting the agency's disputed account of program coverage.

4. Availability of equitable relief. Defendants also contend that Count I, asserted as a standalone equitable constitutional claim, is displaced by the APA avenue pleaded in Count V. [Doc. No. 76 at 9–10 n.1]. Courts' traditional authority to restrain unlawful executive action is subject to statutory limits, and a plaintiff may not use nonstatutory ultra vires review to circumvent an exclusive and adequate judicial-review scheme. *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015); *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 680–82 (2025). But Defendants have not identified a statutory provision expressly precluding consideration of this constitutional claim or demonstrated that allowing its alternative pleading would evade a specific restriction on judicial review. Count I challenges the constitutional limits of federal spending conditions rather than seeking to bypass a review deadline or to revive a claim made unreviewable by statute. *See Webster v. Doe*, 486 U.S. 592, 603 (1988). The Court permits the constitutional and APA theories to proceed at this stage without deciding whether any distinct equitable relief beyond that available under the APA will ultimately be appropriate. Count I survives.

**C. <u>APA Claims</u>**

1. Count II — Arbitrary and capricious action, 5 U.S.C. § 706(2)(A). Defendants maintain that the Secretary's memorandum supplies reasons for the general terms, including stewardship of taxpayer funds, antidiscrimination compliance, and stronger oversight. [Doc. No. 76 at 15–20]. Those explanations are relevant. The Court does not find, merely from disagreement with them, that the memorandum states no reason related to the Conditions. The FAC, however, challenges whether the Department connected those goals to the chosen restrictions, considered statutory program differences and the costs imposed on recipients, and appropriately addressed settled

reliance interests. [Doc. No. 81 at ¶¶ 252–59]. Whether the record supports the Secretary's decision under *State Farm* and *Regents* ordinarily requires assessment of the actual materials before the decisionmaker. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 30–33 (2020). The APA does not require consideration of every conceivable alternative. On the present motion, however, Defendants' preferred merits interpretation of the memorandum does not eliminate the record-dependent dispute. *See Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). Count II survives.

2. Count III — Excess of statutory authority, 5 U.S.C. § 706(2)(C). Defendants contend that the Department has broad statutory authority to set conditions on discretionary grants, citing, among other provisions, 16 U.S.C. § 2106(b). [Doc. No. 76 at 20–22]. I agree that Congress may give the Secretary substantial discretion to condition particular awards. The FAC nevertheless challenges the Policy and Immigration Conditions as an agency-wide exercise of authority across materially different statutory schemes. [Doc. No. 81 at ¶¶ 260–68]. It identifies not only nutrition statutes with detailed eligibility rules but also statutory mechanisms governing land-grant institutions and agricultural experiment stations. [*Id.*]; [Doc. No. 82 at 21–23]. A grant of discretion to impose conditions in one program does not itself empower the Department to override limitations in another or establish a Department-wide substantive policy beyond delegated authority. Conversely, the existence of detailed nutrition eligibility rules does not invalidate every requirement in discretionary forestry or research grants. The pleading identifies a genuine dispute about the scope of statutory authority sufficient to resist dismissal; its resolution will require program- and condition-specific interpretation. Count III survives.

3. Count IV — Notice and comment, 5 U.S.C. § 706(2)(D). The FAC alleges that the Gender and Sports Conditions are, in substance, a legislative reinterpretation of Title IX

promulgated without notice and comment. [Doc. No. 81 at ¶¶ 272–77]. Defendants deny that the conditions interpret Title IX and invoke the statutory exemption for matters concerning grants or benefits. [Doc. No. 76 at 21–22]. The agency's description of its own action is not conclusive; classification depends on the action's legal operation. Defendants nevertheless correctly observe that § 553(a)(2) generally exempts matters relating to "loans, grants, benefits, or contracts" from the APA's ordinary notice-and-comment requirements. 5 U.S.C. § 553(a)(2). The Challenged Conditions expressly govern federal financial assistance awards and therefore implicate that exemption.

The Department previously followed a departmental policy requiring notice and comment for this category of rulemaking notwithstanding the statutory exemption. The Department revoked that policy effective October 28, 2013. *See* Revocation of Statement of Policy on Public Participation in Rulemaking, 78 Fed. Reg. 64,194, 64,194–96 (Oct. 28, 2013). That revocation, however, did not eliminate procedural requirements independently imposed by Congress. Indeed, Congress has expressly required the Secretary to promulgate regulations governing the Supplemental Nutrition Assistance Program ("SNAP") in accordance with the procedures set forth in § 553. *See* 7 U.S.C. § 2013(c). The First Circuit has recognized that, notwithstanding the APA's exemption for grants and benefits, regulations governing the food stamp program remain subject to that statutory requirement. *Levesque v. Block*, 723 F.2d 175, 177 (1st Cir. 1983). *See also District of Columbia v. U.S. Dep't of Agric.*, 496 F. Supp. 3d 213 (D.D.C. 2020) (holding that USDA failed to comply with notice-and-comment requirements when promulgating a final rule altering SNAP work-requirement waivers).

As discussed above, the States have plausibly alleged that the Challenged Conditions will apply to programs administered by FNS, including SNAP. The Secretary directed that the

Challenged Conditions apply broadly to Department funding, and the FAC identifies subsequent Department actions directed specifically at FNS programs. [Doc. No. 81 at ¶¶ 172–85]. Although Defendants represent that the Challenged Conditions have not been and will not be applied to nutrition programs administered through federal-state agreements, I have concluded that those representations do not defeat the States' allegations of a substantial risk of future application at this stage. Accordingly, I cannot assume for purposes of this motion that SNAP and other nutrition assistance programs are categorically excluded from the Challenged Conditions.

To be sure, the possibility that the Challenged Conditions may affect SNAP does not necessarily establish that they constitute regulations governing that program within the meaning of § 2013(c). Nor does the statutory incorporation of § 553 establish that every condition affecting SNAP must undergo notice-and-comment rulemaking. Whether the Challenged Conditions operate as substantive regulations of SNAP, rather than merely as terms governing discretionary financial assistance awards, remains an unresolved question. Similarly, whether the Gender and Sports Conditions constitute legislative rules interpreting or implementing Title IX depends on their substance and legal effect, not merely on the Department's characterization of them. And although Plaintiffs principally frame Count IV as a challenge to USDA's purported reinterpretation of Title IX, I cannot conclude at this stage that their procedural claim is foreclosed as a matter of law. These questions are better resolved upon review of the administrative record and further briefing as appropriate. *See Atieh*, 727 F.3d at 76–77. Count IV for now survives.

4. Count V — Contrary to constitutional right, 5 U.S.C. § 706(2)(B). Count V challenges the Conditions under the APA on the same Spending Clause grounds addressed in Count I. [Doc. No. 81 at ¶¶ 278–82]. For the reasons stated above, the constitutional theories are not legally foreclosed on the pleadings. Count V survives.

5. Count VI — Contrary to law, 5 U.S.C. § 706(2)(A). Count VI alleges conflicts between application of the Gender, Sports, and Immigration Conditions and program-specific federal statutes or regulations, including rules governing nutrition eligibility and nondiscrimination. [Doc. No. 81 at ¶¶ 283–92]. Defendants invoke both the June 5 representation concerning nutrition programs and the general terms' order-of-precedence clause, under which applicable federal statutes and regulations prevail over inconsistent award conditions. [Doc. No. 1-1 at 5]; [Doc. No. 76 at 23–24]. I give both points substantial weight. The order-of-precedence provision may preclude interpretations the States fear, and it would be improper to issue an advisory ruling on every conceivable unlawful application of the Conditions. But the provision does not automatically resolve whether USDA promulgated a condition that, by its terms or necessary operation, conflicts with a governing statute. The States allege that the challenged directive itself imposed requirements across programs before the Department subsequently narrowed its account of implementation. At this stage, I cannot conclude that every pleaded statutory conflict is speculative or necessarily cured by the precedence clause. Whether the challenged action actually requires conduct prohibited by particular statutes or regulations remains for more precise legal and record-based review. For now, Count VI survives.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss, [Doc. No. 75], is DENIED.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge